## No. 13,761.

### STEVENS *v.* THE PEOPLE.

(51 P. [2d] 1022)

Decided November 4, 1935. Rehearing denied November 25, 1935.

560

Mr. JOEL E. STONE, Miss GRAYCE M. SMITH, Mr. CHARLES E. COUGHLIN, for plaintiff in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. WALTER F. SCHERER, Assistant, for the people.

*En Banc.*

MR. CHIEF JUSTICE BUTLER delivered the opinion of the court.

JACK Stevens seeks the reversal of a sentence of imprisonment imposed upon him.

The information alleges that Stevens, "while under the influence of intoxicating liquor, did unlawfully and feloniously cause the death of one Dorothy Hartman, by operating and driving an automobile in a reckless, negligent and careless manner, and with a wanton and reckless disregard of human life and safety, * * *."

1. The prosecution was under section 1, chapter 95, Session Laws of 1923. The title of the act is as fol-

lows: "An Act relating to automobiles, motor and other vehicles, and to persons operating or driving the same while intoxicated or under the influence of drugs, and prescribe the penalty for the violation of this act."

So far as pertinent, section 1 provides: "Any person while under the influence of intoxicating liquor * * * who causes the death of another by operating or driving any automobile * * * in a reckless, negligent or careless manner, or with a wanton or reckless disregard of human life or safety, shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment in the State penitentiary for a period of not less than one year nor more than fourteen years."

If the words "while under the influence of intoxicating liquor," appearing in section 1, are given a broader meaning than the words "while intoxicated," appearing in the title, so as to cover the case of a person who, though under the influence of intoxicating liquor, is not intoxicated, that part of section 1 would be void as not embraced within the title. Colorado Constitution, art. V, §21. The authorities are not harmonious, but we believe that in our statute by using the word "intoxicated" the General Assembly indicated an intent that the words "under the influence of intoxicating liquor," appearing in section 1, are to be understood as synonymous with "intoxicated." Thus construed, section 1 is within the scope of the title.

■■ 2. Counsel for the defendant contend that the evidence is not sufficient to support the verdict.

There was evidence tending to show the following state of facts:

On the night of August 22, 1934, the defendant, Harry Roelfs and Jerry Beam were at a dance hall in Denver. They were standing "right by the drinking compartment." Defendant there said to a witness that he (defendant) had had some wine. At defendant's suggestion, the three left the dance hall and started for Rock Rest, a resort on the road to Golden, west of Denver.

Defendant was alone in his automobile, and his companions rode in another automobile. About half way between Denver and Rock Rest defendant indicated that he wanted to stop. They stopped and defendant produced a quart bottle that at that time was half full of wine, and all three took a drink. They then proceeded to Rock Rest. When they arrived defendant passed the bottle of wine around, and "it was finished." They danced and defendant drank half a glass of beer, Beam's dancing partner drinking the other half. Later, as we shall see, defendant admitted that he drank more. They left Rock Rest and started east to return to Denver. At about midnight the automobile driven by the defendant was going at a speed of 60 miles per hour, and "was swaying back and forth." When it was on the defendant's left (the north) side of the road it collided with an automobile going west on the proper (the north) side of the road at between 25 and 30 miles per hour, and Dorothy Hartman and another woman who were riding in the westbound automobile were killed. The defendant was rendered unconscious. Later, at the hospital, the defendant admitted to a witness that before the accident he had a couple of drinks of wine and a couple of drinks of beer, and that he did not see the other car "till he was right on." The witness said that when he made the statement the defendant "was kind of groggy." On cross-examination by defendant's counsel, the witness testified that he would not say defendant was intoxicated. Beam testified that he "surmised" at the dance hall that defendant had been drinking; that his surmise was based upon defendant's actions. In their brief, defendant's counsel say: "It may be conceded that the evidence shows that the defendant, at some time earlier than one-half hour immediately before the accident had consumed some intoxicating liquor. The amount of liquor consumed by the defendant is not definitely established and at the most there is no evidence to show that he had more than three or four drinks of

wine and one-half glass of beer.'' But, as we have seen, the defendant admitted having two drinks of beer in addition to the wine. The quantity of intoxicating liquor that would produce no perceptible effect upon one person may intoxicate another, depending on many circumstances. It has been said that for the purpose of the statute, a man is intoxicated ''when he has imbibed enough liquor to render him incapable of giving that attention and care to the operation of his automobile that a man of prudence and reasonable intelligence would give.'' *People v. Weaver,* 188 App. Div. (N. Y.) 395, 177 N. Y. Supp. 71. It seems to us that a sufficient test is this: When a driver is so under the influence of intoxicating liquor that his capacity to operate the automobile is impaired, he is intoxicated within the meaning of the law. Note, 42 A. L. R., p. 1503. A person in that condition while driving an automobile is a menace to the public and comes within the terms of the statute.

There was sufficient evidence to sustain the verdict.

■ 3. While Roelfs and Beam were testifying, as witnesses for the defendant, to the occurrences at the time of the accident, the court permitted them to testify, on cross-examination, over defendant's objection, that they did not render assistance to the injured persons, but ran away. How such testimony could prejudice the defendant we fail to see. It was not reversible error to receive it.

■ 4. A witness who arrived at the scene of the accident a few minutes after it occurred and observed the surroundings, experimented later to see whether or not, assuming that two cars were approaching each other at the place where the accident occurred, the car light would flash on the car going in an easterly direction, and over defendant's objection, testified to the result of his experiments. It is said that it was error to receive the evidence because it was not shown that the conditions at the time of the experiments were similar to those existing at

the time of the accident. An examination of the record satisfies us that the objection is without merit.

5. Over defendant's objection, the court permitted witnesses to testify to the following effect: The defendant and his attorney, together with Roelfs, Beam and another, were riding in the same automobile on their way to attend the coroner's inquest. There was talk about the inquest, and in the presence of the defendant "the fact was brought up" by defendant's attorney "not to mention the drinking." The defendant made no objection to his lawyer's suggestion. After they left the automobile and were about to go into the building where the inquest was to be held defendant told Roelfs that his lawyer told him not to say anything about drinking any beer at Rock Rest. And further: "Q. Was anything said with reference to what you should say at the inquest? A. He said not to say anything about drinking beer." In fairness, it should be stated that the lawyer referred to is not one of the lawyers who represent the defendant in this court.

The court did not err in receiving the evidence.

6. The court rejected defendant's offer to prove that at the coroner's inquest witness Beam testified for Stevens; that after giving his testimony there the sheriff imprisoned him, but shortly thereafter released him; that the sheriff warned Beam that if he testified at the trial as he did at the coroner's inquest he would be charged with perjury. The purpose of the offer was not, as in *Kidd v. People,* 97 Colo. 480, 51 P. (2d) 1020, to show bias on the part of the sheriff, for here the sheriff did not testify, but to show that the testimony given by Beam at the trial was colored by fear that the sheriff might carry out his threat. There would be something to the objections if there were any showing that his testimony at the trial was less favorable to the defendant than was his testimony at the coroner's inquest; but there is no such showing. On the contrary, the people sought to show, on cross-examination of Beam, that in

some particulars his testimony at the trial was more favorable to the defendant than was his testimony at the coroner's inquest. As the threat was wholly without effect upon Beam's testimony, the rejection of the offer was not prejudicial, and the objection to the court's ruling falls to the ground.

 7. The defendant offered to prove that the witness Roelfs was imprisoned after the inquest, but shortly thereafter released. There was no offer, as there was with reference to Beam, to prove that the witness was threatened if he testified at the trial as he did at the coroner's inquest. The court did not err in rejecting the offer.

We find no reversible error in the record.

The judgment is affirmed.

MR. JUSTICE BOUCK dissents.

MR. JUSTICE BOUCK, dissenting.

For the first time since becoming a member of the Supreme Court, I am dissenting from an opinion of my colleagues without basing the dissent wholly upon what is shown by the record sent us from the court below. *Partly—and, as a·matter of fact, largely—I form my conclusion from the undeniable physical facts.* I personally viewed that portion of the road where, under the uncontradicted evidence, the automobile collision here in question took place; I viewed those portions constituting the approaches from both directions; I viewed all the adjacent country visible from these various portions of the road. Only in such exceptional circumstances as are presented in this case could I justify my deviating from the general rule limiting reviewing judges to the court record.

Besides the defendant himself (who was convicted and sentenced to the penitentiary on a charge of negligently driving his automobile while he was under the influence of intoxicating liquor, so as to kill another person), there

were only two eyewitnesses of the fatal collision. These were one Pargo, who was driving the other automobile, fiance of Mrs. Hartman (the younger of the two women killed) and one Mrs. Mitchell (sister of Mrs. Hartman and daughter of Mrs. Richards, who was also killed). Except for the testimony given by these two witnesses, thus actually and prospectively related to the deceased women, the evidence against the defendant was purely circumstantial. Therefore, I think, the refusal of the district court to give an instruction tendered by the defendant on circumstantial evidence was in itself sufficient prejudicial error, as shown by the record, to call for a reversal of the conviction. The main basis of my dissent, however, is the reason *outside of the record,* which I am about to discuss.

Riding with Pargo in his car were the witness Mrs. Mitchell and the latter's above mentioned mother and sister. Pargo and Mrs. Mitchell, like the defendant, were rendered unconscious by the collision. This occurred east of a turn which is on the paved road between Denver and Golden immediately west of what is called Welchester. Pargo testified that, though he could not see the defendant's automobile until the latter made the turn a few seconds before the impact, he saw certain reflections of light on trees and on the electric wires strung on poles along the road, from the time the defendant's car was about 1200 or 1300 feet from the turn, and that he could determine from those lights that the defendant was coming on the wrong side of the road and weaving in and out, wobbling from side to side. Mrs. Mitchell corroborated him. They testified that the defendant's speed was sixty miles per hour.

The extraordinary testimony thus positively given on the witness stand, with other testimony of Pargo's, aroused in my mind a strong suspicion that, if not necessarily perjured, the testimony was palpably false.

After studying the record in a sincere attempt to overcome my suspicion, but in vain, I made two different

journeys in daylight over the ground involved. These brought a conviction that the *physical facts* which I examined rendered the testimony of the two witnesses incredible. I took another trip in the night-time, which enabled me to test, even more fairly, certain of Pargo's statements about lights and light effects. As a result, my observations proved conclusively to my mind that— in the light of the location, condition, and direction of the road, including the fatal curve, and because of the inevitable obscuring of one's view by the trees and shrubbery and by the grades and turn of the road—the story told by Pargo of what he could discern in respect to the defendant's car, before this made the turn just before the accident, was not founded in fact. It may well have been evolved honestly by an unreliable imagination working together unconsciously with a dazed and distorted memory of a terrible happening. But it was false.

By way of summary, I therefore say:

My reading and repeated rereading of the recorded evidence left in my mind a disturbing doubt of the defendant's guilt as measured by that evidence.

Then I sought—not further human evidence, but—the *irrefutable physical evidence* that did not depend upon any human witness for its strength. (The jury had not "viewed the premises," as I did, and so it had no opportunity to test the *human* evidence by the unimpeachable *physical* evidence.)

Having found that the *human* and the *physical* evidence could not both be true, I naturally discard the former. I cannot concur in sustaining a conviction when the indispensable evidence in its support is proved false.

Therefore I believe that the defendant is in all fairness entitled to a new trial. Since my brethren, by their opinion, indicate that he is not so entitled, I am compelled to dissent.