[Crim. No. 3250. In Bank.—September 28, 1929.]

THE PEOPLE, Respondent, v. DALLAS D. VAN CLEAVE, Appellant.

Irvin C. Taplin for Appellant.

U. S. Webb, Attorney-General, John D. Richer and John L. Flynn, Deputies Attorney-General, Buron Fitts, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

PRESTON, J.—After a careful reconsideration of this cause, we are pleased to adopt in part, as follows, the opinion of Mr. Presiding Justice Works of the Second Appellate District, as the opinion of this court in bank herein:

"Defendant was convicted of the crime of burglary. He appeals from the judgment and from an order of the trial court denying his motion for a new trial.

"It is first contended by appellant that the evidence was insufficient to support the verdict. The complaining witness, a woman, left an apartment in which she resided at about ten o'clock on a certain evening. Before she departed she saw in their accustomed places in the apartment certain articles which were ascertained, later in the night, to have been abstracted therefrom. It was because of the disappearance of these articles that the charge was made against appellant upon which he was convicted. When the complaining witness left her apartment she drove in her automobile to a certain residence, where she met appellant, who theretofore had been her associate and friend, and some other persons, among whom was one Akins. Shortly after she arrived at this place of meeting the complaining witness discovered that a dog she had brought with her had disappeared. She then gave to appellant a bunch of keys, including those to her car, to the exterior door of the apartment house in which she lived, to her apartment and to her trunk, and she asked appellant to drive her car about the neighborhood of the residence mentioned, in an endeavor to find the missing dog. This was the purpose of the delivery of the keys. Appellant immediately departed upon the quest, taking Akins with him. The two returned, after an absence of from twenty-five to forty-five minutes, with the dog. After some considerable time spent at the residence and after having been to a restaurant for supper, together with Akins and a fourth person, appellant and the prosecuting witness drove to the latter's apartment

and entered it by means of her keys, which had meanwhile been returned to her. They reached the apartment at about 2:30 in the morning. From certain appearances about the rooms it was apparent to the prosecuting witness that the place had been entered during her absence. She at once unlocked her trunk with a key on the bunch she had earlier entrusted to appellant. She testified that four diamond rings, of the value of $4,000, together with $140 in currency had been taken from drawers in the trunk. The evidence tended to show that the burglar had entered the apartment by means of a key, as there was no indication that the place had been broken into, in the ordinary acceptation of that term. The drawers in the trunk, five in number, were held in place by a metal bar which passed across their front and which it was necessary to move before they could be opened. The police found a print of appellant's thumb upon this bar. Other fingerprints were upon it also, but none of them could be identified or plainly discerned. All the prints, except that alone of appellant's thumb, were, in the language of an expert upon the witness stand, but 'smears.' Before the night on which the burglary occurred appellant was familiar with the 'lay' of the apartment of the prosecuting witness. He had visited her there at least as often as every other day for a period of two months. Particularly, according to some of the evidence, he was familiar with the trunk and the mechanism by means of which it was opened, for he had often gone into it to get articles desired by the complaining witness when he was in the apartment with her, or to get articles which he himself desired. Indeed, it is contended by appellant that the sole distinguishable fingerprint on the metal bar was made by him upon some occasion earlier than the night upon which the burglary occurred. It will be remembered that the owner of the trunk had opened the drawers before she left her apartment at ten o'clock and had seen the rings and money in their places. She had been compelled, necessarily, to handle the metal bar in order to open the drawers. Under all these circumstances the inference is perhaps possible that appellant's thumb print was impressed on the bar between ten in the evening and two-thirty in the early morning of the night upon which the burglary was committed, although more will be said on that subject later.

There was evidence also that after appellant's arrest, and while he was in the county jail, he said to a police officer and to the complaining witness: 'If you would let me out for twenty-four hours I believe I can get the diamonds back for you.' It was testified by the officer that he further said that if he was unable to produce the diamonds 'he would pay her back in the way of an instalment from time to time.' Appellant was not allowed to leave the jail because he was unwilling to go after the diamonds in the company of an officer. We think there was sufficient evidence to support the verdict.''

The next claim is that the trial court committed prejudicial error. We quote further from the opinion of the District Court of Appeal, as follows:

██ ''A witness for the defense, a Mrs. Howard, was on the stand when the time for a noon recess arrived. As the recess was about to be taken, and after the judge had given the usual admonition to the jury, counsel on both sides joined in the usual request that 'this witness be instructed not to talk about this trial during the recess.' Thereupon the judge said to the witness: 'You are instructed not to discuss with anyone or allow anyone to discuss with you any subject connected with this trial between now and 2:00 o'clock, when you resume the witness stand.' Some time after Mrs. Howard had taken the stand following the recess the district attorney, while conducting his cross-examination, charged in his questions that she had answered interrogations which she had failed to answer before noon, or had answered them differently. The officer then inquired whether she had talked with anyone during the recess, the trial judge examined her at some length upon the same subject and it seemed to appear that she had indulged in some conversation with at least two persons. It was suggested by counsel that the judge ask her the specific question whether she had conversed about the case, and it was stated that she had been admonished not to talk upon that subject. The judge then said: 'I think that was made clear. At the request of both counsel the court admonished her to that effect, and I myself saw her talking in the back of the courtroom with Mrs. Van Cleave, the wife of the defendant, after court adjourned and while counsel was making an offer of proof, and also saw her walk into the courtroom with the

lady dressed in black sitting in the front row; I don't know who she is, but they came into the courtroom together. Is that the mother of the defendant?' It is this statement of the judge which is assigned as misconduct. After making the statement the judge questioned the witness further and it developed plainly that she had talked with the two persons named by him, but she denied that her conversations were in relation to the case. It also transpired that the lady dressed in black was the mother of appellant. The judge was in error in making the statement to which exception is taken. The matters of fact recited by him, if given a place in the record at all, should have come from the mouth of a witness, and he was no witness. He was neither called as a witness nor was he sworn. He could have become a witness, of course, but a judge should not be put even into such a position except as a matter of final necessity, especially in a criminal case, where there is always a likelihood that the judge who is made a witness will be deemed by the jury to have espoused one side or the other in the controversy being tried before him. The statements of fact made by the judge were intrinsically harmless. He said merely that he had seen the witness talking with the wife and mother of appellant, and she herself admitted that she had talked with them. Notwithstanding this truth, we think the remarks of the court constituted misconduct. Taking the context, as shown by the record, we think the jury must have believed that the judge held the view that the conversation related to the facts of the case. His remarks, therefore, operated to impeach the witness in the estimation of the jury. It is true that his observations were not assigned as misconduct at the trial, but we doubt whether their effect could have been wholly removed by an admonition to disregard them. When a jury believes that a judge has embraced the cause of the prosecution in a criminal case it is most difficult to remove the impression.

"After appellant's arrest his finger-prints were taken by an expert in the police department. The expert testified that the distinguishable thumb-print on the metal bar which held in place the drawers in the trunk of the complaining witness was the counterpart of a thumb-print taken by himself from appellant and that it was made by appellant. Some time later the prosecution offered in evi-

dence finger-prints upon a card found in the identification bureau of the police department and bearing the name of appellant. The expert testified, over the objections of appellant, that he had examined this card as a part of the investigation leading up to the arrest of appellant and that a thumb-print upon it was made by the same thumb which made the print on the metal bar and the one taken by him from appellant after his arrest. The finger-prints on the card were taken at some time before the burglary was committed with which appellant was charged and for which he was convicted in the present action. The card was admitted in evidence over the objection of appellant. This was error. The exhibit was offered merely because it was inspected by the finger-print expert during the investigation which preceded appellant's arrest. It was not admissible for that reason, nor can we conceive of any other ground upon which it was entitled to a place in the record, and it demonstrated to the jury that appellant once before had been in the hands of the police.

■■ "Appellant asked the trial judge to give five instructions each of which, he says, was designed to inform the jury 'that conviction on circumstantial evidence must exclude any and every reasonable hypothesis of innocence based on the adduced facts,' and each of them was refused. We think the proffered instructions, although they were differently phrased, related only to the question of reasonable doubt, and the judge instructed the jury amply upon that subject. The requested instructions were, therefore, unnecessary.

■■ "In order to determine whether there has probably been a miscarriage of justice because of the errors committed at the trial, and in accordance with the provisions of section 4½ of article VI of the Constitution, we have examined the entire cause, including the evidence. It will be observed that, with the exception of the testimony to the effect that appellant, after his arrest, made an offer to return the stolen diamonds if he were released, or to pay for them in instalments, the evidence is purely circumstantial. Let us consider this excepted testimony first. Appellant denies that he made the offer. Not only so, but the testimony came from a police officer who said that the offer was made in the presence of the complaining witness, and

she did not testify on the subject. The testimony concerning appellant's thumb-print on the metal bar of the trunk was not as satisfactory as the prosecution might have desired. The trunk was of the wardrobe variety. It stood on end when it was to be opened. One side of it was arranged to accommodate clothing on hangers. The other side was completely occupied by five drawers, extending from top to bottom of the side. It was from the second of these drawers that the rings and money were taken. The metal bar ran from top to bottom of the trunk and extended, when in place, across one end of the five drawers. It was fastened at the top by a lock. The sole distinguishable finger-print, that of appellant's thumb, was found near this lock. The other prints, 'smears,' as the expert called them, were at various places along the bar, and it is to be noticed that the record fails to show just where any of them was located and, especially, whether any of them was under the thumb-print of appellant. It is particularly worthy of note that the expert declared that he could not determine whether the print of appellant's thumb was impressed upon the bar before or after any other of the prints upon it. Appellant denied strenuously that he committed the burglary and in the denial he was fully supported by Akins.

"One other circumstance of the case deserves mention. Appellant was a married man, but it is evident from the record that the complaining witness was his paramour. The alleged burglary was committed on the night of July 11. Appellant's wife had left him on July 2 or 3. Before the burglary she had caused divorce papers to be served upon him. On the night of the burglary appellant occupied the apartment of the complaining witness with her, and she drove him to another place in the morning. On this ride, before any charge was made against him and before the record shows that he was suspected of the burglary, appellant says he told the complaining witness that he was to go that morning to the office of his wife's counsel in order to effect, if possible, a reconciliation with her. He says that the complaining witness asked him not to do so. The mother of appellant, with whom the complaining witness was well acquainted, and another witness testified that the complaining witness said, later in the same day, that things had gone so far between her and appellant that if he re-

turned to his wife he would be sorry, that she would see that he never lived with her. Akins testified that on this same occasion the complaining witness said that appellant had been 'cheating' on her and that she would 'fix him' for it. Appellant and his wife had apparently become reconciled at the time of the trial, as there was testimony that they were then living together.

"It will be seen from all these circumstances that the case was a close one. It is quite likely that a miscarriage of justice has resulted from the errors committed at the trial. Appellant must have been harmed materially by the reception in evidence of the old finger-print record found in the police archives. It is quite probable that this item of damaging evidence turned the scale against him."

The judgment and order are reversed.

Langdon, J., Curtis, J., and Seawell, J., concurred.

WASTE, C. J., Dissenting.— I dissent. The majority opinion admits, without qualification, that "there was sufficient evidence to support the verdict." The further analysis of the evidence made "in order to determine whether there has probably been a miscarriage of justice," because of the errors committed by the trial court, does not, in my opinion, establish that the case was "a close one." The evidence in the case, aside from, and unaffected by, any errors of the trial court, being sufficient to support the conviction, no miscarriage of justice resulted.

Richards, J., concurred.