**No. 24122**

**Frank Roy Serratore v.**
**The People of the State of Colorado**
(497 P.2d 1018)

Decided May 30, 1972.

</div>

F. E. Dickerson, Erick K. Furedy, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, E. Ronald Beeks, Assistant, for defendant in error.

*En Banc.*

FRANCIS W. JAMISON, County Judge Retired*, delivered the opinion of the Court.

. Defendant Serratore, was convicted by a jury of second-degree burglary and theft. He urges reversal on several grounds, one of which has merit and requires reversal and a remand for a new trial.

The prosecution presented the following circumstantial evidence: Defendant and Bill Lange were in the town of Stratton, Colorado, the night the crime was committed. On the afternoon of the day before the burglary, the defendant had visited the burglarized store and walked around in the store for ten to fifteen minutes while waiting for his companion, Lange, to complete a purchase.

Defendant was taken into custody at about 2 o'clock a.m. the night of the burglary near the scene of the crime while riding with Lange in Lange's pickup truck. In the back of the truck, police saw numerous items of property stolen in the burglary. At this time, the defendant had on his person $133. There had been $266.66 taken in the burglary. A small piece of brown leather was found hanging on a piece of glass from the broken window where the entry to the burglarized store had been made. One of the defendant's brown leather boots had a small piece of leather missing.

The defendant's left thumbprint was found on the top of a stove pointing toward the front of the stove. This stove was located next to the broken window. The stove was five feet seven and one-half inches high, and the defendant is four foot ten and one-half inches tall.

I.

Defendant contends that the introduction into evidence of a Denver Police Department fingerprint card used for comparison purposes was prejudicial error in that it

---

*County Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.

wrongfully advised the jury of past criminal activities of the defendant. It is true that as a general rule, subject to some exceptions, a prior criminal record of a defendant is inadmissible and the introduction of such record is reversible error. *Clews v. People,* 151 Colo. 219, 377 P.2d 125; *Oaks v. People,* 150 Colo. 64, 371 P.2d 443. But the precise question in this case, is whether or not the introduction of the fingerprint card disclosed to the jury a "criminal record"?

When the defendant was taken into custody by the Stratton City Police, no fingerprints were taken. The police used the old fingerprint card from the Denver Police files as the comparison fingerprints for the one taken at the scene of the crime. A policeman from the Denver Police Department was called as a witness at the trial to identify the defendant's fingerprint card and identification remarks thereon. Essentially, he testified that he was assigned to the Identification Bureau; that he takes, classifies, and files fingerprints of "all sorts of people"; and that in 1959 he took the defendant's fingerprints and identification and placed them on the card. The prosecution was allowed to introduce a photocopy of the card with all references to any mention of criminal record deleted. The defendant contends that the facts above constituted an improper divulging to the jury of his past criminal record.

Many authorities are cited by defendant on the matter of the admissibility of police fingerprint cards. *People v. Barile,* 239 App. Div. 637, 268 N.Y.S. 127; *United States v. Dressler,* 112 F.2d 972; *State v. Viola,* 51 Ohio L. Abs. 577, 82 N.E.2d 306. In these cases, the controlling factor was whether or not the jury was advised of the past criminal record by the use of the fingerprint card. When the past record was divulged, the card was held to be inadmissible. Also, if the only real purpose of the card was to infer a past record, it was held inadmissible. Such was the situation in *People v. Van Cleave,* 208 Cal. 295, 280 P. 983. At the time of arrest, Van Cleave's fingerprints were taken by the police. These were used by an expert for comparison and also the old police file card which included a criminal record. In

reversing the conviction, the California Court held:

"The exhibit was offered merely because it was inspected by the fingerprint expert during the investigation which preceded appellant's arrest. It was not admissible for that reason, nor can we conceive of any other ground upon which it was entitled to a place in the record, and it demonstrated to the jury that appellant once before had been in the hands of the police."

In this case, there were only two fingerprint comparisons available to the police. No fingerprints of the defendant were taken when he was placed in custody, and the prosecution's expert relied upon the Denver Police card admitted into evidence and a similar card on record with the Colorado State Penitentiary. No other comparison records were available. It is basic that a "true" fingerprint must be used for comparison purposes. The fingerprint card in this case served a very necessary purpose and was not merely introduced as prejudicial surplusage as in the *Van Cleave* case. Great care was taken by the trial court to delete the criminal record portion of the card before submission to the jury. The authenticating witness did not divulge that he took the fingerprints as part of a prior criminal investigation. Under these circumstances, it was not error for the trial court to admit the old fingerprint card from the Denver Police files. It should be noted, however, that in the usual case where other sample prints are available, such a fingerprint card should not be admitted, because of the danger of disclosing a past criminal record.

II.

It was the prosecution's theory of the case that the defendant's fingerprint found on top of the stove identified the defendant as the person who entered through the broken window. This, because of the fact that the stove is five feet seven and one-half inches high, the defendant is four feet ten and one-half inches tall, the left thumbprint of the defendant on the top of the stove was pointing away from the stove and the broken window was above and next to the top of the stove. The conclusion being that as the defendant entered

through the broken window, he touched the top of the stove and left his thumbprint there. Further, because of the defendant's height, it would be impossible for him to have touched the spot where his print was found if he were standing on the floor. Therefore, even though it was admitted that the defendant was lawfully in the store the day before the burglary, he could not have reached up and left the print where it was found.

The prosecution attempted to illustrate the correctness of the theory to the jury during the trial. One of the prosecution's witnesses measured from the floor to a height of five feet seven and one-half inches and drew a line at that height. Whereupon, the following took place:

"Mr. Russel: Alright, at this time, Your Honor, I ask that the Court request that the Defendant stand and come over and walk next to the line.

"Mr. Dickerson: I have a motion —

"The Court: — I would deny that immediately without argument. He can't be required to testify against himself — that is in the nature of presenting evidence from him.

"Mr. Dickerson: This may constitute a mistrial, something I am trying to avoid.

"The Court: I have ruled in your favor.

"Mr. Dickerson: Thank you."

The defendant contends that the above demonstration violates the basic principle that a defendant cannot be called upon to present evidence against himself. The prosecution contends that this demonstration is in the same category as the many cases requiring a defendant to "exhibit" his body for identification purposes. Both contentions are wrong.

As for the defendant's contention, this court in *Vigil v. People,* 134 Colo. 126, 300 P.2d 545, held that the Colorado constitutional provision against self-incrimination protects only against *testimonial compulsion.* In construing the Fifth Amendment privilege, the United States Supreme Court has stated that the privilege against self-incrimination is a prohibition of the use of physical or moral compulsion to exact *communications. Schmerber v. California,* 384 U.S.

757, 86 S.Ct. 1826, 16 L.Ed.2d 908. At page 762 of the same opinion, the court made clear that the scope of the privilege does not coincide with the "complex of values it helps to protect."

As for the prosecution's contention, the cases it cites are all distinguishable from this case. In *Vigil,* masks were placed on the defendants by a prosecution witness. The purpose was to allow the victim on the witness stand to observe the defendants with masks. There was no communication required of the defendants. The communication came from the witness. Further, there was no participation required of the defendants and truly this was a mere exhibiting of the defendant and not a communicative demonstration. Also, the defendants testified in the case and thereby waived the privilege and could have been compelled to participate in a communicative demonstration. The case of *LaBlanc v. People,* 161 Colo. 274, 421 P.2d 474, was a case wherein the defendant was merely required to bare his arm and exhibit a tattoo to the jury. This again for the purpose of identification and no communication was compelled from the defendant. The case of *Lanford v. People,* 159 Colo. 36, 409 P.2d 829, involved a question of the admissibility of sound motion pictures taken near the time of the alleged offense. These pictures were allowed as real evidence showing the condition of the defendant and his demeanor only. The possible communicative effect was disallowed through proper jury instructions to disregard the communications.

The issues before the court in the present case are two. Was the request of the prosecution an attempt before the jury to compel the defendant's active cooperation in a communicative activity? And, if it was such an attempt, was it so prejudicial that this court must grant a new trial?

First, it must be noted that the defendant had not in any sense waived his privilege against self-incrimination. He was not being asked to merely exhibit himself. Rather, he was being asked to participate in a contrived experiment or demonstration concerning his physical abilities to perform a particular act. Clearly, the purpose of the demonstration was

to *communicate* to the jury the defendant's physical abilities to perform an act that the prosecution believed him unable to perform. The prosecutor was requesting the same communication from the defendant that he obviously could not have compelled the defendant to explain from the witness stand. There is no difference between this requested demonstration and the prosecution attempting to call the defendant to the witness stand and explain how he would have gotten his fingerprint on the stove where it was found while standing on the floor. This kind of evidence is prohibited by the *Schmerber, supra,* case which holds that the privilege "protects an accused only from being compelled to testify against himself, or otherwise provide the state with evidence of a testimonial or communicative nature."

Was this open court attempt to compel a communicative act so prejudicial that the case must be reversed? In *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 730, the United States Supreme Court held that comment upon the defendant's refusal to take the witness stand either in the form of a jury instruction or argument by the prosecutor violated the defendant's privilege against self-incrimination "by making its (the refusal) assertion costly." Commenting upon the refusal then requires a reversal. What stronger comment can be made by a prosecutor than calling upon a defendant in the presence of a jury to waive his privilege against self-incrimination and the defense must stand and refuse? See 144 A.L.R. 1007, 32 A.L.R. 3d 906, and 34 A.L.R. 3d 775 for a compilation of cases on this subject. This case must therefore be reversed and the cause remanded for a new trial.

Other alleged errors were considered, but determined to be without merit.

Judgment reversed and cause remanded for a new trial.

RONALD J. HARDESTY, District Judge* participating.

MR. JUSTICE KELLEY and MR. JUSTICE GROVES not participating.

*District Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.

MR. CHIEF JUSTICE PRINGLE concurs in the result only in which MR. JUSTICE LEE and MR. JUSTICE ERICKSON join.

MR. JUSTICE DAY concurs and specially concurs in which MR. JUSTICE LEE and MR. JUSTICE ERICKSON join.

MR. CHIEF JUSTICE PRINGLE concurring in result only.

I concur in the result only in this matter.

In my view, it was absolutely improper for the People to introduce into evidence the defendant's fingerprint card taken by the Denver Police Department in 1959. Clearly, the inference that had to be drawn by the jury was that the defendant had been arrested at a prior time and this in view of the universal rule that prior arrests are not admissible for any purpose whatsoever. There was no impediment to the taking of fingerprints of the defendant in connection with this case after his arrest. It was, therefore, reversible error, in my view, to submit the 1959 Denver Police fingerprint record to the jury.

I am authorized to say that Mr. Justice Lee and Mr. Justice Erickson concur in the views herein expressed.

MR. JUSTICE DAY specially concurring.

While concurring in the opinion of the majority, I wish specially to point out that I consider additional prejudicial error to have been committed by the court because of comments made as quoted in the majority opinion. Although sustaining the objection to the proposed demonstration, the court, nevertheless, in the presence of the jury characterized the contemplated demonstration as requiring the defendant to "testify against himself." Thus, the jury was told, in effect, that the demonstration would be incriminating. The fact that the demonstration never took place did not eliminate the prejudicial error and its effect on the jury.

MR. JUSTICE LEE and MR. JUSTICE ERICKSON authorize me to say that they join in this specially concurring opinion.