## No. 26232

### The People of the State of Colorado v. Thomas Joseph Montoya

(543 P.2d 514)

Decided December 8, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, John Stephen Phillips, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Mary G. Allen, Deputy, Natalie S. Ellwood, for defendant-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The defendant was convicted of second-degree burglary (Count I) and theft (Count II) and was then tried and convicted by the same jury of having been previously convicted of possession of burglary tools (Count III) and conspiracy to commit burglary (Count IV) for the purpose of enhancing sentences under the habitual criminal statute.

The defendant was sentenced to a term in the penitentiary of not less than 40 years nor more that 50 years on the first count and to a term in

the penitentiary of not less than 10 years nor more than 30 years on the second count, the sentences to be served concurrently.

The defendant alleges error in: (1) the admission in evidence of statements made by the defendant while in police custody following an allegedly illegal arrest, (2) the refusal to suppress photographs of the defendant, (3) permitting in-court identification, (4) compelling the defendant to submit to finger-printing, and (5) allowing the convictions on the enhancement of punishment counts to stand. Our review discloses no reversible error. We affirm.

## I.

The defendant was charged with burglarizing the home of Hilda G. Latimer and stealing a television set. Ms. Bach, a neighbor, observed two men, one of whom she identified as the defendant, leave the Latimer home and load a television set into a 1960-1962 Pontiac. This occurred during the daylight hours. The witness first observed the two burglars as they were leaving the Latimer home and followed them out to the street in order to obtain the license number of the vehicle. As she approached to within a few feet of the defendant, the defendant went to the rear of the automobile and bent the license plate in order to prevent the witness from seeing the complete tag. Ms. Bach, however, was able to read the last four digits of the license number and record them. She then called the police who subsequently broadcasted descriptions of the vehicle and the two men.

Officer Jeffries heard the broadcast. Later that evening he participated with other officers in the stop of an automobile which met the broadcast description of the automobile and which had a bent license plate with the last four digits furnished by the witness. The driver, Dorothy Olguin, had no driver's license. She was placed under arrest.

The officer obtained a notebook from her in which the name Tommy Montoya was written several times. Officer Jeffries learned from the identification records of the Denver Police Department that there were "pick ups" outstanding on Montoya — one from Detective Lee for suspicion of prior burglary and one from the Probation Department.

Officer Jeffries and his partner then proceeded to Dorothy Olguin's apartment. The officers knocked on the door, and after a delay of 20 to 25 seconds, it was opened by the defendant. Jeffries then heard the toilet reservoir refilling in the bathroom. Based on his experience, this caused him to believe that ". . . possibly some narcotics or drugs were flushed." Officer Jeffries then observed fresh needle injection marks on the defendant's arms. The defendant was placed under arrest for investigation of possession of illegal drugs and investigation of burglary. The officer promptly advised the defendant orally of his *Miranda* rights. The defendant stated that he understood those rights. On the way to the police station, Officer Jeffries mentioned that there were witnesses to the burglary. The defendant volunteered the question, "Did *she* get a good look at the *two* guys?"

14

(Emphasis added.)

The following day at police headquarters, the defendant was again advised of his rights by a written form upon which Montoya indicated by his signature that he understood the nature of those rights. He also expressly waived his rights in writing.

Subsequently, Detective Lee advised the defendant of his rights before the defendant voluntarily waived those rights and made further incriminating statements relating to the Latimer burglary. Detective Lee was the detective who had shown Ms. Bach eight photographs of possible suspects on the day following the burglary. At that time she identified the photograph of the defendant as the person involved in the burglary.

## II.

The question directed by the defendant to Officer Jeffries on the evening of the arrest and the statement made to Detective Lee were admitted into evidence after the trial judge found that they were voluntarily given. The defendant challenges the admissibility of these statements on the premise that his arrest by Officer Jeffries was illegal because it was not based on probable cause, and therefore, all statements made subsequent to his arrest were tainted and must be excluded.

In the case of *People v. Gurule,* 175 Colo. 512, 488 P.2d 889 (1971), which involved a somewhat similar factual situation, this court held:

". . . that a person suspected of being wanted for violation of a law, by reason of a recent police bulletin so indicating, may be reasonably detained for questioning concerning his identification and for determining whether such person is still wanted at the time of the detention."

*People v. Gurule* relied on *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971), wherein the matter of temporary detention for questioning was discussed and where we held:

"In order lawfully to detain an individual for questioning, (1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose."

Under the circumstances of this case, the officers had probable cause to arrest. In the first instance they had a reasonable suspicion that the defendant had committed the Latimer burglary because there was evidence linking him to the car which was used in the burglary. It was, therefore, reasonable for the officers to go to Ms. Olguin's apartment in the course of their investigation, and when the officers saw the needle marks, combined with the pre-existing suspicion resulting from the noise of the toilet, they had probable cause to arrest the defendant for possession of illegal drugs and investigation for burglary. In addition, defendant's statements were found by the trial court to have been made voluntarily, after

both oral and written *Miranda* warnings, and waivers of his right to remain silent. Consequently, the trial court properly admitted into evidence the defendant's custodial statements.

### III.

■ The second assignment of error relates to the admission in evidence of three photographs. The defendant relies on *People v. Burgarin,* 181 Colo. 62, 507 P.2d 875 (1973), in which we said:

". . . Overzealous prosecution resulted in the admission of the evidence which we deem to be prejudicial. The prosecution introduced a police mug shot, with accompanying testimony which suggested that the defendant had a prior criminal history. The mug shot which was offered and introduced into evidence, over the defendant's objection, was a typical police identification photograph. It showed a full face and profile view of the defendant with only the police identification numbers removed. . . . The record does not reflect that the mug shot had any probative or identification value."

The present case is distinguishable from *Bugarin* in several respects. First, the photographs were not "typical" police "mug shots." Not only had the police identification numbers been removed, but the profile view had been detached, together with his name and the ruler or measuring standard which indicates the height of the subject. It was a simple black and white photograph of the defendant's full face taken from the front. Secondly, the photographs were not introduced into evidence by the prosecution, but by the defendant after an *in camera* hearing at which the defendant's objection to the use of the photographs before the jury had been sustained. If this was prejudicial to the defendant, he cannot complain for it was self-inflicted.

### IV.

■ The defendant contends that the photographic identification by Ms. Bach on the day following the commission of the crime tainted her in-court identification of the defendant and violated his right to due process of law. Ms. Bach, who testified at the trial, made an in-court identification of the defendant based on her independent recollection from five minutes of close observation during the course of the burglary and theft. At one point she was close enough to touch him and at that point defendant spoke to her. We agree with the trial court finding that the record failed to disclose any impermissible suggestiveness in connection with the photographic identification and thus there was no reversible error. *See Bravo v. People,* 171 Colo. 418, 467 P.2d 814 (1970).

### V.

■ The defendant asserts error in —

"compelling defendant to submit to the taking of fingerprints in the presence of the jury, over repeated verbal protests by the defendant himself"

in violation of his privilege against self-incrimination and his right to a fair and impartial trial.

Conceding that the privilege against self-incrimination applies only to communicative compulsion, and the correctness of *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and *Vigil v. People,* 134 Colo. 126, 300 P.2d 545 (1956), the defendant, nevertheless, contends that under the circumstances of this case ordering him to give his fingerprints in the presence of the jury constituted testimonial or communicative evidence. *Serratore v. People,* 178 Colo. 341, 497 P.2d 1018 (1972).

The fingerprints were taken during the habitual criminal trial, following defendant's adjudication of guilt on the substantive offense. His fingerprints were taken for the sole purpose of identifying the defendant here as the same individual shown to have been previously convicted of other crimes by the records already in evidence.

The *Serratore* case on which defendant relies is distinguishable. In *Serratore,* the act which the defendant was asked to perform would, in and of itself, constitute evidence of a communicative nature, rather than exhibition of a part of the body for the purpose of identification. The giving of his fingerprints did not suggest that the defendant did or did not do a particular act. *See LaBlanc v. People,* 161 Colo. 274, 421 P.2d 474 (1966); *Vigil v. People,* 134 Colo. 126, 300 P.2d 545 (1956); *also* Crim.P. 41.1.

We find that the other allegations of error are without merit.

The judgment is affirmed.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON dissent.

MR. JUSTICE GROVES dissenting.

I respectfully dissent for the reasons expressed in the last paragraph of Mr. Justice Erickson's dissent.

MR. JUSTICE ERICKSON dissenting.

I respectfully dissent. The facts outlined in the majority opinion reveal a failure on the part of the police to observe the protective principles embodied in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). *Stone,* in which I mistakenly concurred, clearly mandates that an officer "must have a reasonable suspicion that the individual has committed, or is about to commit, a crime" in order to render his temporary detention constitutionally reasonable. The facts of this case do not bear out the conclusion that Montoya's detention was based upon a reasonable suspicion of criminal activity. The majority claims that evidence linked the defendant to the car used in the Latimer burglary. This link, in my opinion, is so weak as to

be almost non-existent. The fact that Olguin carried a notebook with Montoya's name in it, and that this notebook was obtained in some manner by the police does not in any way connect the defendant with the vehicle used in the crime. Therefore, the suspicion generated by these circumstances was not sufficient, in my view, to support the constitutionality of the temporary detention.

In addition, the fact that the officer was aware of a "pick-up" outstanding on Montoya could not serve to justify the instant temporary detention. The pick-up order was in relation to another burglary — not the one for which the defendant was being temporarily detained. Furthermore, the facts do not establish that the pick-up for the prior burglary was based upon reasonable suspicion. Temporary detention cannot be founded upon guesswork and speculation. The officer's conduct in this case was motivated by something less than reasonable suspicion.

Lastly, no probable cause existed to support the arrest of the defendant for possession of narcotics. The fact that an officer standing at the front door heard a toilet reservoir refilling — a questionable fact — together with his observation of needle marks on the defendant's arms, simply does not establish probable cause that the defendant possessed narcotic drugs. Again, guesswork and speculation are not the servants of justice.