481 So.2d 979 (1986)
STATE of Florida, Petitioner,
v.
Kendra Sue MACIAS, Respondent.
No. 85-1351.
District Court of Appeal of Florida, Fourth District.
January 22, 1986.
Rehearing and Certification Denied February 12, 1986.
*980 Jim Smith, Atty. Gen., Tallahassee, Joan Fowler Rossin, Asst. Atty. Gen., West Palm Beach, Michael J. Satz, State Atty., and James P. McLane, Asst. State Atty., Fort Lauderdale, for petitioner.
Fred Haddad of Sandstrom & Haddad, Fort Lauderdale, for respondent.
HERSEY, Chief Judge.
The State of Florida petitions for a writ of certiorari to review the decision of the circuit court, acting in its appellate capacity, reversing respondent's DUI conviction and granting her a new trial. Our court assumes jurisdiction pursuant to rule 9.030(b)(2)(B), Florida Rules of Appellate Procedure, and our review is "limited to a determination of whether the circuit court followed procedural due process and observed the essential requirements of law." State v. Hillyard, 398 So.2d 996, 997 (Fla. 4th DCA), rev. denied, 408 So.2d 1093 (Fla. 1981). In making this determination, certiorari should only be granted where "there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." Combs v. State, 436 So.2d 93, 96 (Fla. 1983).
Respondent, Kendra Macias, was charged with driving under the influence of alcohol to the extent that her normal faculties were impaired (Count I), and driving with a blood alcohol level of 0.10 percent or above (Count II).
A jury trial was held in county court in April 1983. Officer Howard Fox of the Davie Police Department testified that at about 4:00-4:15 a.m. on April 30, 1982, he observed respondent driving her car in an erratic manner, swaying from side to side, and at times crossing the solid line on the roadway. After following her for about six blocks, he pulled her over. Officer Fox smelled a strong odor of an alcoholic beverage on respondent's person and also observed that she was "very wobbly," had slurred speech and watery, bloodshot eyes, and in talking she would alternately laugh and cry.
Officer Fox further stated that he administered roadside sobriety tests, consisting of a balance test, heel-to-toe test, and finger-to-nose test. Respondent failed all of the tests. He then transported her to the police station. At that time she was "still swaying from side to side." She acknowledged that she had been drinking. In Officer Fox's opinion, respondent's normal faculties were impaired by alcohol.
During the direct examination of Officer Fox, the trial judge directed respondent to state her name, at the request of the prosecutor and over the objection of defense counsel, for the purpose of showing her normal voice characteristics. She was also instructed to perform in court the same roadside tests which were administered the night of her arrest, again over objection. The trial judge noted that the purpose of the tests was limited to showing respondent's present normal faculties and they were in no way a reconstruction of what her faculties were on April 30, 1982. The officer was not permitted to comment on the manner in which respondent performed the in-court tests, but it is apparent from the record that she was able to perform them without difficulty.
*981 The state also called Karen Perez, a Davie police aide, as a witness. She testified that she first came into contact with respondent at 4:19 a.m. on April 30, 1982. Perez observed that respondent had an extreme odor of alcohol about her, very bloodshot eyes, flushed skin, that she was crying, and that her speech was slurred.
In response to questioning by Perez, respondent said that she was a cocktail waitress, but had not worked for a few days. She had eaten earlier in the evening, and had started drinking vodka mixed with orange and grapefruit juice at 11:00 p.m. at a place called the Banana Boat. She consumed six drinks between 11:00 p.m. and 3:00 a.m., at which time she started driving home. When asked whether she was under the influence of alcohol, respondent replied "maybe, yes."
Perez administered a breathalyzer test at 4:40 a.m. The reading showed a blood alcohol level of .19 percent, which is almost double the legal limit. In Perez's opinion, respondent's normal faculties were impaired by alcohol.
On cross-examination defense counsel attempted to discredit the accuracy of the breathalyzer; however, Perez maintained that to her knowledge the reading could not vary to the extent that it would show almost double the legal limit. Also, the blood alcohol level is normally higher than that shown by the breath test.
Respondent did not testify and did not present any witnesses or evidence.
The jury found respondent guilty as charged on both counts. She appealed the conviction to the Broward County Circuit Court. The circuit judge reversed the conviction and ordered a new trial, finding that the trial court's directing respondent to speak in court and to perform sobriety tests violated her fifth and fourteenth amendment privilege against self-incrimination. The state petitions this court for a writ of certiorari quashing the lower court's order.
In Schmerber v. California, 384 U.S. 757, 763-64, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966), the Supreme Court discussed extensively the nature of the fifth amendment privilege against self-incrimination, stating in relevant part:
It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling "communications" or "testimony," but that compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate it.
(Footnote omitted.) The Court further noted that the privilege does not apply to "acts noncommunicative in nature," as contrasted with those which are communicative, such as a nod or headshake. 384 U.S. at 761 n. 5, 86 S.Ct. at 1830-31 n. 5.
Here, the circuit court found that the trial court's compelling respondent to speak so that the arresting officer could make a voice comparison constituted a violation of respondent's fifth amendment privilege.
Voice exemplars which are "used solely to measure the physical properties of the witnesses' voices, not for the testimonial or communicative content of what was to be said" do not violate the fifth amendment. United States v. Dionisio, 410 U.S. 1, 7, 93 S.Ct. 764, 768, 35 L.Ed.2d 67 (1973) (footnote omitted). Clark v. State, 379 So.2d 97 (Fla. 1979), cert. denied, 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed.2d 371 (1981). "[T]he revelation of the sound of one's voice" is considered to be "physical, non-testimonial *982 evidence... ." Lusk v. State, 367 So.2d 1088, 1089 (Fla. 3d DCA 1979).
In the instant case there is no question that the words respondent was compelled to utter in court were used only to ascertain the physical properties of her voice and not for the content of what was said (only her name). The circuit court, however, still found them to be testimonial because the officer's comparison of her in-court voice with her voice on the night of her arrest was used as evidence against her. This is not the law. In Schmerber the Supreme Court found that taking a blood sample from the defendant without his consent, even though it was to be used as evidence against him, did not violate his privilege against self-incrimination. 384 U.S. at 761, 86 S.Ct. at 1831. Also, in cases involving the taking of handwriting exemplars (which are treated in the same manner as voice exemplars for fifth amendment purposes), it has been held that the exemplars are not testimonial so long as they are not used for their content, notwithstanding that they may be used for comparison purposes in order to obtain a conviction. See Lacey v. State, 239 So.2d 628 (Fla. 2d DCA 1970), cert. denied, 401 U.S. 958, 91 S.Ct. 987, 28 L.Ed.2d 242 (1971); Schoenbrun v. United States, 403 F.2d 56 (5th Cir.1968); United States v. O'Kane, 439 F. Supp. 211 (S.D.Fla. 1977).
The circuit court also found, for the same reason, that compelling respondent to perform the roadside sobriety tests in court violated her privilege against self-incrimination. We conclude from a review of the above-cited authorities that the circuit court departed from the essential requirements of law in so holding. The trial court, in having respondent walk and make the gestures required by the tests, directed her to perform acts which are by nature non-communicative. As noted in Schmerber, for that reason such gestures are to be distinguished from gestures such as a nod or headshake and are not violative of the fifth amendment. The Supreme Court further noted in Schmerber that a defendant may be compelled to "assume a stance, to walk, or to make a particular gesture" without violating the fifth amendment. 384 U.S. at 764, 86 S.Ct. at 1832. The in-court sobriety tests served only to demonstrate respondent's current physical characteristics and capabilities and, as stated by the trial judge, were allowed only for that limited purpose.
We note that in Machin v. State, 213 So.2d 499 (Fla. 3d DCA), cert. denied, 221 So.2d 747 (Fla. 1968), the court found that if the defendant demonstrated his running gait to the jury he would be subject to cross-examination because the running gait would be a form of testimony where witnesses had testified that the person who committed the crime ran with a limp. The third district also found in Wells v. State, 468 So.2d 1087 (Fla. 3d DCA 1985), based on Machin, that displaying tatoos would be testimonial. We respectfully disagree with the results in those cases. Both a running gait and tatoos are identifiable physical characteristics which are by nature non-communicative. Such characteristics are not rendered testimonial merely because they tend to prove or negate the accused's guilt.
Additionally, a field sobriety test has been held not to be a communication. State v. Edwards, 463 So.2d 551 (Fla. 5th DCA), rev. denied, 471 So.2d 43 (Fla. 1985). See also County of Dade v. Callahan, 259 So.2d 504 (Fla. 3d DCA 1971) (results of physical coordination tests are evidence of physical condition and not violative of fifth amendment), cert. denied, 265 So.2d 50 (Fla. 1972). If the performance of these tests at the scene is not a communication, the same is ipso facto true of performance of the identical tests in court.
The Florida Supreme Court recently held that the harmless error rule is applicable to violations of fifth amendment rights. State v. Marshall, 476 So.2d 150 (Fla. 1985). Thus, even if error had been committed by the trial court, we would conclude under these facts that it was harmless.
First, there does not appear to be any indication in the case law that it is necessary for the state to demonstrate that a *983 defendant possesses normal faculties in order to obtain a DUI conviction. See State v. Edwards, 463 So.2d 551 (Fla. 5th DCA 1985); State v. McIntyre, 393 So.2d 16 (Fla. 2d DCA 1980), rev. denied, 399 So.2d 1144 (Fla. 1981). Normal faculties are presumed and, if the defendant contends otherwise, the burden is on him to present evidence that he does not possess normal faculties. McIntyre; see also Parkin v. State, 238 So.2d 817 (Fla. 1970) (every person is presumed capable of controlling his actions and of being held responsible for them), cert. denied, 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322 (1971). Thus, the state's evidence in this regard was merely extraneous, since respondent never contended that her faculties are not normal.
Another basis for holding that any error was harmless is that there was overwhelming evidence of guilt. In Grala v. State, 414 So.2d 621 (Fla. 3d DCA 1982), witnesses testified that the defendant smelled strongly of alcohol, had watery, bloodshot eyes and a pale face, and that his van had drifted over the center line. The defendant himself admitted that he had consumed several drinks. The appellate court found error in admitting the results of a blood test where proper procedures were not followed, but held that such error was harmless because there was overwhelming evidence of guilt aside from the blood test. This court cited Grala with approval in Lampkin v. State, 445 So.2d 673 (Fla. 4th DCA 1984).
The instant case is similar to Grala in that there was also testimony that respondent was driving erratically, smelled strongly of alcohol, had bloodshot eyes and admitted to having consumed several alcoholic drinks. In addition, there is evidence here that respondent could not stand without swaying, had slurred speech, failed roadside sobriety tests, and had a breathalyzer reading of almost double the legal blood alcohol level. (Respondent's level was .19 percent. It was noted in Grala that a level only slightly higher, .23 percent, is "`the bottom level of a lethal dose.'" 414 So.2d at 622 n. 1.) Thus, there is considerably more evidence of intoxication here than in Grala, where the evidence was found to be overwhelming.
We therefore grant the petition for writ of certiorari, quash the circuit court's order reversing respondent's DUI conviction, and remand for further appropriate proceedings.
CERTIORARI GRANTED; ORDER QUASHED.
DOWNEY and GLICKSTEIN, JJ., concur.