515 So.2d 206 (1987)
Kendra Sue MACIAS, Petitioner,
v.
STATE of Florida, Respondent.
No. 68440.
Supreme Court of Florida.
November 5, 1987.
*207 Fred Haddad of Sandstrom & Haddad, Fort Lauderdale, for petitioner.
Robert A. Butterworth, Atty. Gen., and Michael W. Baker, Asst. Atty. Gen., West Palm Beach, for respondent.
PER CURIAM.
This cause is before the Court on petition for review of the decision of the Fourth District Court of Appeal in State v. Macias, 481 So.2d 979 (Fla. 4th DCA 1986). Because we find that the decision conflicts with Machin v. State, 213 So.2d 499 (Fla. 3d DCA), cert. denied, 221 So.2d 747 (Fla. 1968), and Wells v. State, 468 So.2d 1087 (Fla. 3d DCA 1985), we have jurisdiction. Art. V, § 3(b)(3), Fla. Const. The district court of appeal overturned the decision of a circuit court, which had in its appellate capacity reversed the petitioner's criminal convictions because she had been required to testify against herself. For the reasons expressed below, we approve the decision of the district court of appeal.
Petitioner, Kendra Sue Macias, was charged with driving under the influence of alcohol to the extent of impairment of her faculties and driving with an unlawful blood alcohol level in violation of section 316.193(1) and (3), Florida Statutes (1981). The charges were tried by a jury in county court. The arresting officer testified that he stopped Macias about 4 a.m. because of her erratic driving. He detected a strong odor of alcohol on her person, observed that she was "very wobbly," that her speech was slurred, and that she had watery, bloodshot eyes. The officer administered several field sobriety tests, referred to as the "balancing test," the "finger-to-nose test," and the "heel-to-toe test," all of which she failed. Macias told the officer that she had had six drinks within the last five hours. She was placed under arrest and at the police station was given a breathalyzer test which showed her blood alcohol level at 0.19 percent  nearly twice the legal limit.
During the testimony of the arresting officer, the court, at the request of the prosecutor and over the objection of defense counsel, directed Macias to, in front of the jury, (1) state her name and (2) act out the same roadside sobriety tests the officer had administered on the night of the arrest. In response to the order, Macias recited her name, and the officer compared the quality of her speaking voice to that on the night of her arrest. The court explained that the purpose of the in-court performance of the sobriety test was to show Macias' present faculties and was "in no way a reconstruction of what they were on the date in issue." The court refused to allow the officer to compare Macias' incourt performance with that on the night in question.
The jury found Macias guilty on both counts. On appeal the circuit court reversed and awarded a new trial on the ground that Macias was compelled to be a witness against herself in violation of the United States and Florida Constitutions. On petition for certiorari, the district court of appeal quashed the circuit court's order of reversal. The district court reasoned *208 that there was no violation of Macias' privilege against self-incrimination because the acts she was compelled to perform in court were presented only to demonstrate physical characteristics and were neither communicative nor testimonial in nature.
In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the admission of the defendant's blood, over his objection, as evidence to establish a charge of driving while intoxicated was upheld as not violating the fifth amendment privilege against self-incrimination. The United States Supreme Court stated:
It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Boyd v. United States, 116 U.S. 616 [6 S.Ct. 524, 29 L.Ed. 746]. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling "communications" or "testimony," but that compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate it.
384 U.S. 757, 763-64, 86 S.Ct. 1826, 1832 (footnote omitted). It was testimonial compulsion, rather than every kind of compulsion, for which the privilege was originated. 8 Wigmore, Evidence, § 2263 (1961). According to 4 S. Gard, Jones on Evidence, § 22:3, at 10 (6th ed. 1972), "[t]he more recent authorities clearly show a tendency to adhere to the Wigmore concept that only oral testimony and the production of documents or other objects by the witness, and acts of an assertive character, are within the privilege." (Footnote omitted.)
Compelling a defendant to give voice exemplars in order to evaluate the physical properties of his voice, rather than the content of what is said, does not violate the privilege against self-incrimination. United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); Clark v. State, 379 So.2d 97 (Fla. 1979). The same principle applies even when the defendant is required to speak in the presence of the jury. Lusk v. State, 367 So.2d 1088 (Fla. 3d DCA 1979). Voice exemplars are usually used to assist a witness in determining identification. However, the fifth amendment is no more implicated where, as here, the witness contrasted the qualities of Macias' voice in court with those he had heard on a previous occasion.
With reference to the performance of the in-court sobriety test, it is well settled that a defendant may be required to perform certain physical acts in court without violating his fifth amendment privilege against self-incrimination. 3 C.E. Torcia, Wharton's Criminal Evidence, § 624 (13th ed. 1973). That the performance of a required act may point to the defendant's guilt does not necessarily mean that his fifth amendment rights have been violated. Schmerber v. California. As in cases where oral statements are compelled, the issue turns on whether the required actions are testimonial or communicative in nature. See Annot., 3 A.L.R.4th 374 (1981).
As noted in the opinion of the district court of appeal, the relevancy of acting out the roadside sobriety tests in court seems remote, particularly in view of the fact that the court refused to permit the officer to compare Macias' performance with that on the night she was arrested. However, Macias' objection was based on the privilege against self-incrimination, not relevancy. We cannot see how the actions of Macias in performing the sobriety test were communicative or testimonial in nature. Such actions, made when she was fully sober, did not infer that Macias was drunk on the night she was arrested. We do not say that under all circumstances a judge must accede to the prosecutor's request that a DUI defendant perform roadside sobriety tests in court. See § 90.403, Fla. Stat. (1985) (evidence may be excluded on *209 grounds of prejudice or confusion). See also cases cited at 3 A.L.R.4th 374, 399 holding that a trial court, in its discretion, may refuse to compel the accused to perform a physical act in the presence of the jury if the prejudicial effect of the required act outweighs its probative value. There is, however, no fifth amendment violation when such actions are required.
In Machin, because witnesses had testified that the person who committed the crime ran with a limp, the defendant wanted to demonstrate his running capability to the jury without exposing himself to cross-examination. The court held that to do so would be a form of testimony which would subject the defendant to cross-examination. Similarly, the defendant's request to display his tattoos in Wells was deemed testimonial in nature. Schmerber tells us that the activities proposed by the defendants in those cases were not testimonial in nature. Therefore, we disapprove the opinions in Machin and Wells to the extent that they hold that the requested demonstrations were testimonial in nature.
We approve the decision of the district court of appeal under review in this case.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, GRIMES and KOGAN, JJ., concur.
SHAW, J., dissents.
BARKETT, J., dissents with an opinion.
BARKETT, Justice, dissenting.
I respectfully dissent. None of the cases relied upon by the state specifically approves, against a fifth amendment challenge, a procedure such as the one used here in which the defendant is required to act out certain events in court in the presence of the jury. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and its progeny tell us that various kinds of objective physical evidence may be compulsorily extracted from a suspect without violating the privilege against self-incrimination. But the taking of noncommunicative, nontestimonial, objective physical information from the body of the accused for subsequent presentation in court is not what happened here. The defendant, who had elected not to testify, was compelled not merely to exhibit her voice or other immutable physical characteristics but to demonstrate her present ability to perform an act. Such a display is necessarily subjective and goes beyond making the accused merely the source of real or physical evidence. See Schmerber, 384 U.S. at 764, 86 S.Ct. at 1832.
In my view, whether or not an active display is a communication depends upon the purpose for which it is presented. See Serratore v. People, 178 Colo. 341, 497 P.2d 1018 (1972). In Schmerber, the blood analysis report was presented for the purpose of establishing intoxication at the time of the alleged offense through evidence of a physical characteristic of the blood. Such a characteristic either absolutely would or would not exist at any given time. In every other case cited by the majority, the same is true. The physical evidence extracted from a suspect  fingerprints, blood typing, vocal analysis, handwriting exemplars, and other indicators of physical characteristics  was used, either investigatively or as evidence in court, to establish identity. Exhibition of a suspect to witnesses for visual or auditory examination has been for the same purpose. Like intoxication, a particular identity does or does not exist.
In this case, the state contended that the demonstrations were needed for the purpose of "showing respondent's present normal faculties," State v. Macias, 481 So.2d 979, 980 (Fla. 4th DCA 1986) (emphasis added), a mutable characteristic, and the trial court permitted the evidence on this basis. The "evidence" was not, as in Schmerber, the source of objective physical evidence of intoxication at the time of the alleged offense nor was it for identification but rather for the purpose of allowing the jury to compare petitioner's conduct in court with her conduct as reported by witnesses on the night of the offense. If the petitioner had offered the demonstrations for the purpose of showing that she normally *210 has slurred speech or normally is incapable of performing the sobriety tests, such evidence clearly would be testimonial in nature on the issue of her intoxication at the time of the offense, and subject to cross-examination. Similarly, I find the demonstrative evidence offered in Wells and Machin to be testimonial in nature and would approve the lower court decisions in those cases.
Under the rule established by the majority, defendants who have decided not to take the stand might be compelled to perform any manner of gestures or acts at a trial, leading to bizarre and untenable courtroom displays. An accused might be compelled to demonstrate his capability to perform the act of which he has been accused, thus corroborating a victim's testimony. Compelled demonstrations, which in essence amount to the state's using the defendant as a witness against himself or herself, violate the fifth and fourteenth amendments to the United States Constitution and article I, section 9 of the Florida Constitution.
Furthermore, when a defendant has made the choice to present his or her defense only through cross-examination, requiring a defendant to perform such a display impermissibly burdens that defendant's fifth amendment right not to testify. If the defendant refuses to perform the test, her refusal will prejudice her case to the jury. Serratore, 178 Colo. at 348, 497 P.2d at 1022. If, on the other hand, the defendant performs the demonstration, she may feel compelled to explain the performance in contemplation of the jury's inferences from it. As the Fifth District noted in Thomas v. State, 439 So.2d 245, 246 (Fla. 5th DCA 1983), requiring an accused to perform such a demonstration in front of a jury "leave[s] to the jury's uninformed speculation any and all questions concerning the consistency of the defendant's physical appearance between the time of trial and the time of the crime, the purpose of the demonstration, and the possible explanations for any conflicts between testimony and appearance." In the event the defendant is physically unable to perform the test at trial, he or she might be forced to testify to avoid speculation by the jury as to the reasons for the inability. While every case might not exert such pressure, I see no reason to open the door to such an invasion of constitutional rights.
On the relevancy question, I would point out that in this case it was not necessary for the state to prove that the accused had normal faculties because the defense never raised the issue.[*] Thus, the in-court demonstrations did not tend to resolve an issue of material fact and clearly were irrelevant. See § 90.401, Fla. Stat. (1981). Irrelevant evidence is inadmissible and should be excluded when there is an objection to its admission.
NOTES
[*] Just as every person is presumed sane, Parkin v. State, 238 So.2d 817, 821 (Fla. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed 2d 322 (1971), so that there is no state burden to prove sanity unless an insanity defense is raised, so also every person may be presumed to have normal faculties, so that no fact issue thereupon exists unless one is raised by the defense.