## No. 21336.

JOE F. LANFORD *v.* THE PEOPLE OF THE STATE OF COLORADO.
(409 P.2d 829)

Decided January 10, 1966. Rehearing denied January 31, 1966.

M. KEITH SINGER, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JAMES W. CREAMER, JR., Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS is a case of first impression in Colorado as to certain aspects of alleged compulsory self-incrimination.

Plaintiff in error, hereinafter referred to either as the defendant or by name, was convicted on November 7, 1963 in the Superior Court of the City and County of Denver of the charge of driving while under the influence of intoxicating liquor in violation of C.R.S. '53, 13-4-30. Subsequent to the trial court's denial of the defendant's combined motion for a judgment of acquittal and new trial, a sentence of 30 days in jail and a fine of $200 plus costs was imposed.

The defendant asserts several grounds as error, which we tabulate as follows, viz:

(1) As a matter of law, the evidence was insufficient to present the case to the jury;

(2) A motion picture of the defendant subsequent to his arrest should not have been admitted since it was taken without his consent;

(3) The introduction of the motion picture violated the defendant's constitutional right against self-incrimination because it showed him refusing to submit to certain coordination tests;

(4) The introduction of testimony that charges of police brutality were made by the defendant constituted prejudicial error; and,

(5) The court's Instruction No. 7 on intoxication was erroneous.

An examination of the record and evidence presented

indicates that the first and fourth grounds asserted are without merit.

The second and third grounds of error arise out of the following facts. Shortly after Lanford's arrest, a sound motion picture film was taken at the police station showing him being questioned by Officer Gray. There is evidence in the record that the defendant was not cooperative when the film was being taken and refused to take designated coordination tests. Error is assigned with regard to the admission of the film in evidence on the theory that since the movie was taken without Lanford's consent, it was inadmissible; further, that it resulted in violating his constitutional rights against self-incrimination under Article II, Section 18 of the Colorado Constitution and the Fifth Amendment of the United States Constitution.

At a trial conference called to challenge the admissibility of the film, the court first agreed with counsel that the film would be admitted without the sound, but it later ruled that it could be run with that portion of the sound track which showed the requests to defendant to take the tests and his refusal. We note, after viewing the film, that his refusal showed his slurred speech as well as his general demeanor. Prior to the actual showing of the film, Lanford's counsel objected "to any portions of the sound being used in certain portions of * * * this movie." He had, however, previously stated that he had no objection to the showing of the film itself; still later he protested the "admissibility of the movie based upon the objections made in the pretrial conference," *i.e.*, on the ground of self-incrimination. Once the trial court decided to admit the film and part of the sound track, no request was made by defendant's counsel for any limiting instruction, either at the time of showing the film or at the conclusion of the trial.

Generally speaking, the law governing the admissibility of photographs applies to motion pictures;

that is to say they must be relevant to the issues and be properly authenticated before they may be introduced. 23 C.J.S. *Criminal Law* § 852(1)d., 62 A.L.R.2d 686, 701. Photographs are usually held to be competent evidence of anything that a witness can properly describe in words [*Potts v. People*, 114 Colo. 253, 255, 158 P.2d 739 (1945)], provided, however, that such pictorial representations have some probative value. *Jones v. People*, 146 Colo. 40, 54, 360 P.2d 686 (1961).

The difficulty with the particular type of motion picture here is that it was taken without the defendant's consent and shows his refusal to submit to tests. We must, therefore, consider whether it violates this defendant's constitutional rights against self-incrimination as alleged.

■ Professor Wigmore has stated that the privilege against self-incrimination is specifically limited to *testimonial* compulsion. 8 *Wigmore on Evidence* § 2265. Colorado has followed this general rule. For example, we have held that the privilege against self-incrimination was not violated where, over a general objection of impropriety, defendants were required, during a trial for armed robbery, to have masks placed over their faces in open court to facilitate identification by a witness, since testimonial compulsion was not involved. *Vigil v. People*, 134 Colo. 126, 129, 300 P.2d 545 (1956).

Our research reveals no Colorado decisions and only two cases in another jurisdiction in which the identical problem to the one in the instant case was considered — both of the latter arose in Texas. In *Housewright v. State*, 154 Tex. Crim. 101, 225 S.W.2d 417 (1949), a defendant was charged with driving while intoxicated. Motion pictures were taken of him while he was being booked at the police station. The introduction of these movies was objected to on the same ground being urged here. The Texas court, noting that no objection was made at the time of the taking of the pictures, said that the matter did not fall within the rule against self-

incrimination. Rather, it held that the taking of the film was analogous to a defendant placing his foot in a footprint pursuant to an order. The court, on page 103 stated:

"Evidently the witnesses could delineate the peculiarities of appellant at the scene of the alleged offense and his demeanor and actions in order to give a basis of their opinion as to his intoxicated condition and it seems to us to be but a clearer delineation of what they saw and described to the jury if such a scene could thus be shown by a series of pictures taken immediately after his apprehension instead of the eye-witnesses testifying only from memory."

On the petition for rehearing the court supplemented its reasons for admitting the film by saying: "The film, of necessity, only portrayed appellant's appearance and conduct, * * *." Later in *Carpenter v. State,* 169 Tex. Crim. 283, 333 S.W.2d 391 (1960), the same court citing *Housewright, supra,* held a similar film was admissible over objection. In that case the defendant was convicted of murder in causing the death of a pedestrian while driving under the influence of alcohol. No comment was made there by the court as to whether the defendant objected to the original taking of the motion picture.

We note that prior to *Carpenter, supra,* the Texas court, however, had taken the position that the introduction of evidence that a defendant refused to take a sobriety test constituted reversible error. *Cardwell v. State,* 156 Tex. Crim. 457, 243 S.W.2d 702 (1951). The same court in a later case held that even questions from which the jury could infer that the defendant had refused a blood test gave rise to error. *Saunders v. State,* 172 Tex. Crim. 17, 353 S.W.2d 419 (1961). Evidently, Illinois and Oklahoma also have both recognized a right in a defendant to refuse to take a sobriety test and have held that it is error to show his refusal. E.g. *People v. Knutson,* 17 Ill. App.2d 251, 149 N.E.2d 461 (1958);

*Duckworth v. State* (Okla. Crim. 1957), 309 P.2d 1103 and *Engler v. State* (Okla. Crim. 1957), 316 P.2d 625; also see, *People v. Stratton,* 286 App. Div. 323, 143 N.Y.S.2d 362 (1955), *aff'd,* 1 N.Y.2d 664, 133 N.E.2d 516 (1956). We thus find that though Texas has ruled movies admissible, it has drawn a line between the use of movies alone as an evidentiary tool and the use of testimony showing the refusal to take sobriety tests; and, that some other states forbid testimony relating to the refusal to take the tests. On the other hand, some jurisdictions have held that it is proper to introduce evidence of a defendant's refusal to take a sobriety test because such relates to his conduct, demeanor, statements, attitude and relation to the crime charged. E.g. *State v. Durrant* (Dela. 1963), 188 A.2d 526; see also *State v. Nutt,* 78 Ohio App. 336, 65 N.E.2d 675 (1946); *State v. Gatton,* 60 Ohio App. 192, 20 N.E.2d 265 (1938). Several states which apply the latter rule analogize the admissibility of a defendant's refusal to take a sobriety test with the right in the particular state to comment on the defendant's failure to testify, e.g., *State v. Benson,* 230 Iowa 1168, 300 N.W. 275 (1941); or by recognizing such right of comment, *People v. Conterno,* 170 Cal. App.2d 817, 339 P.2d 968 (1959); or by citing such cases with approval, *Gardner v. Commonwealth,* 195 Va. 945, 81 S.E.2d 614 (1954); and *City of Barron v. Covey,* 271 Wis. 10, 72 N.W.2d 387 (1955).

In *Stull v. People,* 140 Colo. 278, 291, 344 P.2d 455 (1959), our court indicated that evidence which might be inadmissible on a general tender, might be received, when relevant, for a limited purpose if the trial court advised the jury of that limited purpose at the time it was offered and then gave a cautionary instruction in the general charge. Cf. *State v. Tryon,* 145 Conn. 304, 142 A.2d 54 (1958).

Our review, therefore, of Colorado decisions and those of other jurisdictions that relate to this problem, discloses no apparent general rule and no Colorado

decision in point. We therefore now hold that: Moving pictures and their sound, which are relevant and which allegedly show the demeanor and condition of a defendant charged with driving under the influence of either alcohol or drugs, taken at the time of the arrest or soon thereafter, are admissible in evidence even though they show the defendant's refusal to take sobriety and coordination tests, when properly offered in order to show the defendant's demeanor, conduct and appearance, and to show why sobriety and coordination tests were not given; further, that if a defendant objects to the introduction and admission of such movies, they still are to be admitted, provided that then the trial court must, at defendant's request, caution the jury as to the limited purpose of the evidence, and again at defendant's request, give a limiting instruction in the general charge for the same purpose.

 Here Lanford, after arrest, chose to exercise his constitutional right to refuse to answer any questions or to submit to any testing. He did not, however, ask the trial court for any cautionary charge to the jury at the time the film was offered or for a limiting instruction at the close of the evidence. He, therefore, cannot raise the issue here for the first time.

 The last assignment of error raises the question as to whether the trial court's instruction on the meaning of "intoxication" was erroneous in that it stated that one drink of an intoxicating liquor might produce such a mental and physical condition as to render the defendant "under the influence" of alcohol within the meaning of the statute. The argument rests upon the allegation that 1960 Perm. Supp., C.R.S., section 13-4-30 (2) (a), as adopted in 1955, caused such instruction [which was apparently based upon wording that appears in *Snyder v. Denver*, 123 Colo. 222, 227 P.2d 341 (1951)] to be inaccurate. We note that in the 1955 Amendment the Legislature saw fit to prescribe that a blood alcohol reading of 0.05 per cent or less raises a

*presumption* that a defendant was not under the influence of intoxicating liquor. We find the alleged error to be without merit. See: *Garcia v. People,* 121 Colo. 130, 213 P.2d 387 (1949), and *Stevens v. People,* 97 Colo. 559, 563, 51 P.2d 1022 (1935).

The judgment is affirmed.