STATE OF CONNECTICUT *v.* JAMES W. CORRIGAN

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 17-12183

Argued January 9—decided February 10, 1967

*Howard R. Steeg,* of Bristol, for the appellant (defendant).

*Robert P. Sneideman,* prosecuting attorney, for the appellee (state).

DEARINGTON, J. The defendant was tried and convicted by a jury on an information charging operation of a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a of the General Statutes. He has assigned error in the denial of his motions for a directed verdict and to set aside the verdict and in that certain constitutional rights were violated.

The defendant offered no evidence, but after the state had rested he moved for a directed verdict in

his favor. A court may direct "a verdict of not guilty in a criminal case when the reasoning mind could not reasonably reach a conclusion other than that the evidence, under the law, is not sufficient to justify a finding of guilty beyond a reasonable doubt. The trial court should not direct a verdict of not guilty unless the judge is clearly of the opinion, upon the best consideration and judgment he can give the matter, that under the law the evidence compels such a direction." *State* v. *Torello,* 100 Conn. 637, 643; see General Statutes § 54-89; Maltbie, Conn. App. Proc. § 203. In support of his motion, the defendant claimed that his constitutional rights under the fifth, sixth and fourteenth amendments to the federal constitution had been violated. If this were so, an attack might have been specifically directed against such claimed violations rather than by way of a motion for a directed verdict. The serious question raised here relates, not to the quantum of evidence, but rather to the admissibility of evidence. We will hereinafter consider the effect of the defendant's motions. Putting aside procedural questions, we have reviewed the assignments of errors.

For a clearer understanding of the defendant's claims, a brief summary of the evidence is necessary. The jury could find that the defendant was arrested on July 27, 1966, at approximately 12:50 a.m. The arresting officer, accompanied by an assisting officer, both members of the Bristol police department, arrived at the scene and the arrest was made some three or four minutes later. Prior to the arrest, the officer on two occasions requested the defendant to "walk down and do what I tell you. Turn to the right and come back." The defendant hesitated and on each occasion turned to the left and came back. The defendant's breath had an alcoholic odor, his speech was slurred and he

swayed while walking. He was then placed under arrest and was advised that he could remain silent and if he did make a statement it could be held against him and further that he could get a lawyer. He was taken to the police station, where he was again informed of his right to a lawyer. He then said he wanted to see his lawyer and when asked who his lawyer was, he gave no answer. He was given an opportunity to call a lawyer but made no effort to make such a call. He did, however, call his wife and talk with her, and she later arrived and he left with her. While at the police station, he refused to take a chemical test but voluntarily submitted to certain sobriety tests such as the finger-to-nose test, which he "missed completely," and walking a line and turning, which he performed in a hesitating manner. He did, however, pick a pencil up from the floor and also told the officer the correct time. He admitted to having had a few beers. Both the arresting officer and the assisting officer were of the opinion that the defendant was under the influence of intoxicating liquor and unfit to operate a motor vehicle.

The defendant claims that there was an infringement of his constitutional rights in that the procedural safeguards laid down in *State* v. *Krozel,* 24 Conn. Sup. 266, 268, 1 Conn. Cir. Ct. 549, 551, and *Miranda* v. *Arizona,* 384 U.S. 436, were not followed. In *Krozel,* we held that following a reasonable interrogation by the police the defendant was entitled to the assistance of his counsel and that a denial of this right was a violation of due process. However, since this opinion came down, the opinion in *Miranda* v. *Arizona,* supra, has been announced, and in it the rights of a defendant as enunciated in *Krozel* have been further extended. In *Miranda* and the three cases heard at the same time, as well as in *Escobedo* v. *Illinois,* 378 U.S. 478, the defendants

were taken into custody and interrogated in a police station for the purpose of obtaining a confession, and they were not effectively advised of their right to remain silent or of their right to consult with an attorney. Briefly stated, *Miranda* holds (pp. 444, 479): "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . . Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. . . . After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warning and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

It is significant that the defendant makes no claim that any statement of an "exculpatory or inculpatory" nature made by him and stemming from custodial interrogation was introduced by the prosecution. The defendant's only objection to the reception of evidence was unrelated to any constitutional question. This being so, we have no evidence or subject matter upon which to focus the *Miranda* safeguards. Before his arrest the defendant was asked to walk a short distance, turn to his right and return. This required no verbal act on his part.

Moreover, *Miranda* does not preclude on-the-scene questioning of one in the investigation of crime without a prior warning, since one is not then under restraint. Id., 477. The adversary system of criminal proceedings commences when an individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any way. "Under the system of warnings we delineate today or under any other system which may be devised and found effective, the safeguards to be erected about the privilege [against self-incrimination] must come into play at this point." Ibid. While at the police station, the defendant was asked to perform certain sobriety tests and he complied. But his compliance cannot be said to have been an intrusion upon his constitutional rights, since no verbal act on his part was involved. *Schmerber* v. *California,* 384 U.S. 757, 763.

The defendant contends that his request for counsel was denied, but there was evidence that the officer advised the defendant of his right to counsel on two occasions, at the scene and at police headquarters. On the latter occasion, he said that he wanted to see his lawyer. When asked who his lawyer was, he gave no answer. At that time he was given permission to communicate with his lawyer but he failed so to do. That he had access to a telephone is evidenced by his call to his wife. Even if evidence was acquired by the state in violation of the defendant's rights under the constitution, he would at most be entitled to suppress, exclude or otherwise object to the evidence and its fruits if they were sought to be used against him at trial. *United States* v. *Blue,* 384 U.S. 251, 255. We are unable to find anything in the record of an evidential nature indicating a violation of the defendant's constitutional rights.

A motion for a directed verdict and a motion to set aside the verdict are reviewed on the evidence. *State* v. *Amendola,* 152 Conn. 166, 168. While the motions in this case were limited to the constitutional questions previously considered, we have reviewed the entire evidence and conclude that it was adequate to support a verdict of guilty beyond a reasonable doubt. The trial court's rulings on the motions were not erroneous.

There is no error.

In this opinion PRUYN and KINMONTH, Js., concurred.