No. 79SC180

**The People of the State of Colorado v. Arthur Paul Ramirez**
**No. 79SC69**
**Raymond Cordova v. The District Court in and for the County of Pueblo, and State of Colorado, and the Honorable Richard D. Robb, Judge thereof**
**Nos. C-1801, 79SC116 & 79SC185**
**The People of the State of Colorado v. Andres P. Zepeda, Keith W. Jasper and Mark A. Theodoran**
**No. 79SC223**
**Alberta Bell Anderson v. The People of the State of Colorado**
**No. 79SC105**
**The People of the State of Colorado v. Merced Luna, Glenn Gerald Rutten & Guadalupe Arellano**
**No. 79SC285**
**Richard Thomas Edwards v. The People of the State of Colorado**

(609 P.2d 616)

Decided March 31, 1980.    .Rehearing denied April 14, 1980 in 79SC285.

Robert R. Gallagher, Jr., District Attorney, Steven R. Polidori, Deputy, for petitioner in 79SC180.

Tague, Goss, Schilken & Beem, P.C., P. Arthur Tague, for respondent in 79SC180.

John R. Naylor, Henry J. Geisel, for petitioner in 79SC69.

J. E. Losavio, Jr., District Attorney, Scott B. Epstein, Deputy, for respondents in 79SC69.

Paul Q. Beacom, District Attorney, Marc P. Mishkin, Deputy, for petitioner in C-1801, 79SC116 and 79SC185.

Manuel J. Solano, for respondent Andres P. Zepeda in C-1801, 79SC116 and 79SC185.

Johnson & Margolis, P.C., H. Kenneth Johnson II, for respondent, Keith W. Jasper, in C-1801, 79SC116 and 79SC185.

Lloyd W. Macy, Chris Melonakis, for respondent, Mark A. Theodoran in C-1801, 79SC116 and 79SC185.

Dale P. Tursi, for petitioner in 79SC223.

Alexander M. Hunter, District Attorney, Dennis B. Banebo, Deputy, for respondent in 79SC223.

Robert N. Miller, District Attorney, Elizabeth Strobel, Deputy, for petitioner in 79SC105.

Kim Houtchens, for respondent, Merced Luna in 79SC105.

Paula Miller, for respondents Glenn Gerald Rutten and Guadalupe Arellano in 79SC105.

Ralph L. Cavalli, for petitioner in 79SC285.

Nolan L. Brown, District Attorney, Linda Palmieri Rigsby, Deputy, for respondent in 79SC285.

JUSTICE ERICKSON delivered the opinion of the Court.

We granted certiorari in these cases to consider the constitutional issues that have been raised by the imposition of roadside sobriety tests on persons suspected of driving under the influence of intoxicating liquors or drugs. The central issue presented by each of these cases, which we have consolidated for the purpose of this opinion, is whether a person must be given the warnings directed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to a request for submission to a roadside sobriety test. We now reverse the suppression orders issued in *People v. Ramirez, People v. Luna*, and *People v. Zepeda*,[1] and affirm the district court's denial of suppression in *Cordova v. District Court, Anderson v. People*, and *Edwards v. People*.[2] Because the factual background which created the constitutional issues which are now before us in each of these consolidated cases is similar, we will specifically address only the fact situation presented in *People v. Ramirez*.

## I.

In the early morning hours of September 20, 1978, a police officer for the City of Aurora observed a car driven by the defendant, Arthur Paul Ramirez, proceeding erratically in a northbound direction on Havana Street. The officer first saw the vehicle strike the curb and then saw it veer across the double yellow line into the southbound lane. Almost immediately thereafter, the vehicle proceeded back across the northbound lanes and struck the curb several more times. At that point, the officer stopped the vehicle and attempted to ascertain the driver's identity.[3]

The police officer first asked Ramirez to produce his license and registration card. According to the officer's testimony, Ramirez had difficulty in finding his driver's license. After smelling a strong odor of an alcoholic

---

[1] We are remanding *Zepeda* and its companion cases, *People v. Jasper* and *People v. Theodoran*, to the district court for a hearing to determine whether the defendants' consent to taking the roadside sobriety test was voluntary under the Fourth Amendment standards set out *infra* at note 12.

[2] In *Edwards v. People*, the defendant questions the constitutionality of the interlocutory appeal provisions of C.A.R. 4.1. We upheld those provisions in *People v. Traubert*. 199 Colo. 322, 608 P.2d 342 (1980). The defendant Edwards' other arguments are without merit.

[3] In this case the defendant does not and cannot contend that the officer did not have lawful authority to make the stop. *See Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971).

beverage on Ramirez's breath, the officer asked Ramirez to get out of the automobile. The officer testified that Ramirez had difficulty in walking. Ramirez was then asked if he would take a roadside sobriety test. He consented without reluctance.[4]

Ramirez was first asked to walk heel to toe in a straight line. According to the officer, when Ramirez attempted to walk a straight line, he could only use half-steps and he staggered badly. Thereafter, the officer asked Ramirez to stand on one leg. Again he failed. He could not maintain his balance on one leg. Ramirez was also instructed to place his heels and toes together, to tilt his head back with his eyes closed, and to then touch the tip of his nose with his index finger using his left hand and then his right. He was unable to accomplish the feat and swayed badly. Ramirez was finally asked to stand with his heels and toes together, with his arms relaxed at his side, with his head tilted back and his eyes closed. He could not perform the test and, again, swayed badly. The officer subsequently arrested Ramirez and charged him with driving under the influence of intoxicating alcohol. Section 42-4-1202, C.R.S. 1973. He was not advised of his *Miranda* rights, however, until after he had consented to and performed the roadside sobriety tests.

Prior to trial, Ramirez's counsel moved to suppress the results of the roadside sobriety tests on the grounds that they were taken in violation of the defendant's *Miranda* rights. The motion was granted by the Arapahoe County Court, and, on the prosecution's appeal to the district court, the suppression order was affirmed. The prosecution now seeks to determine whether *Miranda* and its progeny require a police officer to give a person a *Miranda* warning prior to a request for performance of a roadside sobriety test.

## II.

The primary issue before us involves the Fifth Amendment privilege against self-incrimination. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court thoroughly reviewed the historical and philosophical bases underlying the constitutional privilege against self-incrimination and concluded:

"[T]he [single] constitutional foundation underlying the privilege [against self incrimination] is the respect a government — state or federal — must accord to the dignity and integrity of its citizens. To maintain a 'fair state-individual balance,' to require the government 'to shoulder the entire load,' [and] to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to

---

[4] An individual cannot be compelled to take a roadside sobriety test against his wishes. *See, Lanford v. People*, 159 Colo. 36, 409 P.2d 829 (1966). If, however, the individual refuses to submit to a chemical test of his breath, blood, or urine, he may have his license revoked. See section 42-4-1202, C.R.S. 1973 (implied consent to chemical tests).

punish an individual produce the evidence against him by its own independent labors, rather than by the cruel simple expedient of compelling it from his own mouth. In sum, the privilege is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'" (Citations omitted.)

Specifically addressing the admissibility of several inculpatory statements derived from custodial interrogation,[5] the Court held that an inculpatory statement is constitutionally infirm under the Fifth Amendment unless it can be shown that the defendant had been informed of his constitutional rights prior to being questioned. The *Miranda* warning requires that an accused person who is in custody must be advised, prior to the time that a statement is taken, that he has the right to remain silent, that anything he says can be used against him, that he has the right to an attorney, and that an attorney will be provided to him if cannot afford to hire one.

Presented with a fact situation similar to the one before us, the Supreme Court again reviewed the scope of the Fifth Amendment in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In *Schmerber*, the defendant was forced to submit to the extraction of a blood sample, which the police then used to determine the level of alcohol in his blood. Rejecting the defendant's Fifth Amendment challenge to the compelled blood test, the Court held that the privilege only protected the accused from being compelled to testify against himself or to otherwise provide the prosecution with "evidence of a testimonial or communicative nature." The Court acknowledged that historically the Fifth Amendment privilege had not been given the broad interpretation which the *Miranda* opinion suggested.[6] The Court stated:

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of

---

[5] In *Miranda*, the Court declared that the Fifth Amendment applied whenever the person being interrogated was "in custody at the station or otherwise deprived of his freedom of action in any significant way." In view of the Court's latter decisions upholding this language, *see, e.g. Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), we have no difficulty determining that the petitioner was in custody as it was defined in *Miranda*. While the defendant was not under arrest at the time he was requested to take the sobriety tests, the record shows that he was not free to leave the area. In our view, this constitutes a significant deprivation of his freedom of action.

[6] The Court cited Mr. Justice Holmes' statement in *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1909):

"Another objection is based upon an extravagant extension of the Fifth Amendment. A question arose as to whether a blouse belonged to the prisoner. A witness testified that the prisoner put it on and it fitted him. It is objected that he did this under the same duress that made his statements inadmissible, and that it should be excluded for the same reasons. But the prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof."

responses which are also communications, for example, compliance with a subpoena to produce one's papers . . . . On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communication' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

Thus, since the evidence derived from the blood test was neither the defendant's testimony nor evidence relating to some communicative act, its admission was not barred by the Fifth Amendment.

■ Following *Schmerber*, the Supreme Court issued several decisions which further clarified the meaning of the phrase testimonial or communicative nature. In *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court again held that the defendant's Fifth Amendment rights were not violated. Wade was compelled to utter certain words used by the person who committed a robbery while he was appearing in a lineup wearing a disguise similar to that worn by the robber. The Supreme Court stated:

"We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have . . . . Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt."

Similarly, in *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), the Supreme Court held respectively that handwriting and voice exemplars may be required without violating the privilege against self-incrimination. In each case, the Supreme Court rejected the argument that the exemplar was communicative or testimonial because neither required the defendant to surrender any knowledge that he might have. Taken together, the cases support the proposition that the broad privilege against self-incrimination announced in *Miranda* must be carefully confined in its application to the realm of coerced confessions and statements.

### III.

■ In light of the Supreme Court's holdings in *Schmerber* and *Miranda*, we must now determine whether the roadside sobriety test is of

such a nature that it effectively compels a confession from its subject,[7] or instead, whether it acts merely to compel the exhibition of physical characteristics. At the outset, we note that the courts in a large number of states have considered the issue before us and nearly all have held that the roadside sobriety test does not compel a confession from its subject.[8] In *Commonwealth v. Kloch*, 230 Pa. Super. 563, 327 A.2d 375 (1974), for example, a Pennsylvania court aptly declared:

"Requiring a driver to walk in an effort to determine whether he is intoxicated does not violate his privilege against self-incrimination, for the evidence secured is not of a 'testimonial nature' . . . . Rather, the driver is the source of 'real or physical evidence' compulsion of which does not come within the scope of the Fifth Amendment.

The Supreme Court of New Hampshire similarly rejected a defendant's claim that sobriety tests violated his Fifth Amendment rights:

"[Field sobriety tests] are premised upon the relationship between intoxication and the externally manifested loss of coordination which it causes. These tests do not seek to compel from the defendant any knowledge he might have; nor do they involve the defendant's communicative faculties in any way. They only compel him to exhibit his physical characteristics of coordination. Thus, the field sobriety tests do not constitute testimonial compulsion but are merely a source of real or physical evidence and are not within the privilege against self-incrimination." (Citations omitted.)

*State v. Arsenault*, 115 N.H. 109, 336 A.2d 244 (1975). We accept these cases as persuasive authority that a roadside sobriety test merely compels

---

[7] In *Schmerber*, the Court noted that some tests seemingly directed to obtaining physical evidence may actually be directed to eliciting responses which are essentially testimonial. The use of a lie detector, which ostensibly measures physical responses, was one example cited by the Court where "[t]o compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment." In this case the roadside sobriety tests do not force the subject to betray his subjective knowledge regarding his guilt or innocence. Therefore the Court's admonition is not relevant here.

[8] Our research indicates that the following courts have held that a roadside sobriety test does not fall under the provisions of the Fifth Amendment: California, *Whalen v. Municipal Court of the City of Alhambra*, 79 Cal. Rptr. 523 (Ct.App. Cal. 1969); Connecticut, *State v. Corrigan*, 228 A.2d 568 (Cir.Ct. Conn. 1967); Delaware, *State v. Bliss*, 238 A.2d 848 (Del. 1968); Illinois, *People v. Mulack*, 40 Ill.2d 429, 240 N.E.2d 633 (Ill. 1968); Indiana, *Heichelbeck v. State*, 281 N.Ed.2d 102 (Ind. 1972); Iowa, *State v. Heisdorffer*, 164 N.W.2d 173 (Iowa 1969); Kansas, *State v. Faidley*, 450 P.2d 20 (Kan. 1969); Montana, *State v. Finley*, 566 P.2d 1119 (Mont. 1977); New Hampshire, *State v. Arsenault*, 336 A.2d 244 (N.H. 1975); New Jersey, *State v. Macuk*, 57 N.J. 1, 268 A.2d 1 (1976); New York, *People v. Suchocki*, 291 N.Y.S.2d 237 (Dist.Ct. Nassau County 1968); North Carolina, *State v. Strickland*, 173 S.E.2d 129 (N.C. 1970); North Dakota, *Borman v. Tschida*, 171 N.W.2d 757 (N.D. 1969); Ohio, *City of Piqua v. Hinger*, 238 N.E.2d 766 (Ohio 1968); Oklahoma, *Flynt v. State*, 507 P.2d 586 (Okla. Crim. 1973); Oregon, *State v. Bhattacharya*, 525 P.2d 203 (Ct.App. Ore. 1974); Pennsylvania, *Commonwealth v. Kloch*, 230 Pa. Super. 563, 327 A.2d 375 (1974); Tennessee, *Trail v. State*, 526 S.W.2d 127 (Tenn.Crim. 1975); Washington, *City of Mercer Island v. Walker*, 458 P.2d 274 (Wash. 1969).

the exhibition of physical characteristics and does not activate the protections afforded by the Fifth Amendment.

While we have not previously addressed the particular issues raised in this case, we recognized in *People v. District Court*, 187 Colo. 333, 531 P.2d 626 (1975), that the privilege against self-incrimination does not extend to demonstrative evidence obtained as a result of the performance of acts by the defendant. Moreover, in *Thompson v. People*, 181 Colo. 194, 510 P.2d 311 (1973), we affirmed a trial court's ruling that the Fifth Amendment did not bar the admission of motion pictures taken of the defendant while he was undergoing a sobriety test. *See also, Lanford v. People*, 159 Colo. 36, 409 P.2d 829 (1966). Consistent with the reasoning expressed in those opinions,[9] we now hold that the privilege against self-incrimination does not extend to the results obtained from a roadside sobriety test.

In reaching our decision, we are mindful of the fact that, although a roadside sobriety test necessarily rests on the subjective observations of the testing officer, it is nonetheless designed to reveal objective information about the driver's coordinative capabilities. Like the blood test considered in *Schmerber*, a sobriety test is premised on the predictable effects of the consumption of ethyl alcohol:

"Sensitivity is reduced, reaction time is slowed, ability to discriminate is diminished, digital dexterity is reduced, auditory and visual discrimination and judgment fall away, tactile perception is lowered, and speed of motor response drops."

4 Gray, *Attorney's Textbook of Medicine*, § 133.51 (3rd Ed. 1968). The test's purpose is to obtain tangible evidence of a suspect's physical condition, and, to that end, the subject is requested to exhibit his body for visual inspection.[10] In no instance, however, does the test contravene the requirements of the Fifth Amendment by requiring the subject to divulge any knowledge he might have. The fact that the subject's guilt may be inferred from the results of the test goes to the probity of the testing method, not to its character as a supposed confession surrogate.

In addition, we do not think that a contrary holding is required by the fact that a roadside sobriety test can only be conducted with the

---

[9] Although *Serratore v. People*, 178 Colo. 341, 497 P.2d 1018 (1972) held that a defendant could not be compelled to perform certain testimonial and communicative acts before a jury, we do not interpret *Serratore* to be dispositive of this case. In *Serratore*, the request was made in front of a jury. We noted that if the defendant had refused to perform the test, his assertion of his right to refuse to testify would have correspondingly prejudiced his case to the jury. To the extent that *Serratore* may be read as extending beyond the courtroom, we expressly disapprove the holding.

[10] It is, in fact, a significant improvement over the traditional "stock description of slurred speech, staggering gait, fumbling wallet, blood shot eyes, odor of alcohol, and disarray of clothing" that often provided the basis for driving under the influence convictions prior to the institution of the roadside sobriety test. *State v. Arsenault, supra.*

subject's consent and cooperation. *See Lanford v. People*, 159 Colo. 36, 409 P.2d 829 (1966). While it is true that both consent and cooperation are hallmarks of a valid confession under the Fifth Amendment, that fact alone cannot be dispositive of the issue before us. The mere willingness to perform certain acts that may ultimately be of evidentiary significance does not, a priori, convert those acts into communicative or testimonial events.[11] Rather, the acts must first be classified by their intrinsic nature. The secondary issue of voluntariness then becomes relevant to the question of coercion which must be determined by the appropriate Fourth or Fifth Amendment standard.[12]

Accordingly, the suppression orders in *Ramirez*, *Luna*, and *Zepeda*, are reversed, and the district court's denials of suppression in *Cordova*, *Edwards*, and *Anderson* are affirmed. All of the cases which were consolidated for determination in this opinion are remanded for further proceedings in accordance with the directions contained in this opinion.

JUSTICE GROVES does not participate.

---

[11] *Cf. Lewis v. United States*, 382 F.2d 817 (D.C. Cir. 1967):

"[E]vidence is not communicative simply because it is the end product of an exercise of will by a suspect. The constitutional privilege does not protect a man from being compelled to exercise his motor functions to stand up, step down, walk, speak or submit to photographing or fingerprinting if they disclose nothing about his knowledge . . . . The act of writing designated words for comparison does not communicate anything about Appellant's knowledge; it creates tangible evidence, to be sure, but if neither the resultant evidence nor the act of creating it is communicative, we see no reason why it should make any difference that Appellant had to act."

[12] The applicable standards for determining whether a defendant has voluntarily consented to performing the test have been set out in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) and *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). See *People v. Traubert*. 199 Colo. 322, 608 P.2d 342 (1980). In this case, . however, the question of voluntariness was not argued before this Court, and, it will be treated as waived.