NOTE: This
sketch is schematic; it
is not to scale.

The PEOPLE of the State of Colorado,
Plaintiff-Appellant,
v.
Manford Frank HELM,
Defendant-Appellee.

No. 81 SA 123.

Supreme Court of Colorado,
En Banc.

Sept. 21, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., J. Stephen Phillips, John Daniel Dailey, Asst. Atty. Gen., Denver, for plaintiff-appellant.

Hugh R. Warder, Glenwood Springs, for defendant-appellee.

DUBOFSKY, Justice.

The People bring an interlocutory appeal under C.A.R. 4.1 from an order of the county court, affirmed by the district court, suppressing the results of a roadside sobriety test and a blood alcohol test in the prosecution of the defendant, Manford Frank Helm, for drunk driving. The lower courts suppressed the test results primarily because the defendant was not forewarned that he could refuse to take the roadside sobriety test. We reverse the lower courts' rulings.

On April 23, 1980, a Glenwood Springs police officer, responding to a report of a hit-and-run accident involving a red Cadillac and a motorcycle, found both vehicles at the Hot Springs Lodge about a quarter mile from the scene of the accident.[1] While the officer was examining damage to the motorcycle, the defendant, the driver of the Cadillac, approached the officer and denied

1. Apparently the motorcyclist followed the Cadillac from the scene of the accident to the lodge parking lot.

involvement in the accident. The officer noted that the defendant had an odor of liquor on his breath, unsteady balance, and thick, slurred speech.

The officer apprised the defendant of his grounds for believing that he had been driving under the influence of intoxicating liquor and asked him to take a roadside sobriety test. The defendant responded, "no problem." In the course of the test, the officer observed that the defendant could not walk a straight line, turn without staggering, touch the tip of his nose, or recite the alphabet. The officer then arrested the defendant for driving under the influence of intoxicating liquor, section 42–4–1202(1)(a), C.R.S.1973, and leaving the scene of an accident, section 42–4–1406(1), C.R.S. 1973, and took him to the police station.

Before administering a blood alcohol test, the officer gave the defendant the advisement required by the implied consent law, section 42–4–1202(3)(b), C.R.S.1973. The advisement stated that the circumstances which led the officer to believe that the defendant was under the influence of alcohol were:

> "1.) The vehicle you were driving was involved in an accident which left the scene.
> 2.) You have a odor of alcohol on your person.
> 3.) You were unable to pass my Roadside Sobriety Test."

After receiving the implied consent advisement, the defendant agreed to take a breathalyzer test. The officer testified that the defendant appeared to be "extremely intoxicated" and had difficulty following instructions. The test results showed a blood alcohol weight of 0.14 percent.[2]

The defendant moved to suppress the results of the roadside sobriety test, alleging that it violated his Fourth Amendment rights. He also moved to suppress the results of the breathalyzer test, arguing that the exclusion of roadside sobriety test results would leave the officer without sufficient grounds for having invoked the implied consent law. The county court found that the People had failed to meet their burden of showing that the defendant's decision to take the roadside sobriety test was knowing and intelligent, and granted the defendant's motions. The court relied on *People v. Ramirez*, Colo., 609 P.2d 616 (1980), which suggests that a defendant must voluntarily consent to a roadside sobriety test, and *Phillips v. People*, 170 Colo. 520, 462 P.2d 594 (1969), which held that knowledge that one may properly refuse to consent to a warrantless search is a prerequisite to a voluntary consent. Although the court listed the defendant's ignorance that he could refuse to submit to the test as its major reason for finding his consent involuntary, it also considered the following circumstances: the defendant was in custody; he was not advised of his *Miranda*[3] rights before taking the roadside sobriety test; he had only an eighth grade education; and he was extremely intoxicated and had trouble understanding simple directions.

Having suppressed the results of the roadside sobriety test, the county court also deleted the results from the grounds enumerated in the implied consent advisement. The court deemed the notice insufficient because it alleged only that the defendant left the scene of an accident and had an odor of alcohol on his breath. Therefore, the court also excluded the blood alcohol test results, concluding that the officer lacked probable cause to require the breathalyzer test.

The prosecution appealed the county court's suppression order to the district court. That court upheld the county court order, reasoning, first, that *People v. Ramirez, supra*, required the county court to decide whether the defendant's consent to the roadside sobriety test met Fourth Amendment voluntariness standards, and,

---

2. Section 42–4–1202(2)(c), C.R.S.1973 (1980 Supp.), provides that a defendant is presumed to be under the influence of alcohol if the blood alcohol test establishes the weight of alcohol in the defendant's blood at 0.10 percent or more.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

second, that the record supported the county court's finding that the defendant did not voluntarily submit to the test. The district court also affirmed the suppression of the blood alcohol test results. Because the county court ruling rested on the erroneous supposition that a consent to search cannot be voluntary unless the person from whom the consent is sought knows that he may refuse permission for a warrantless search, we reverse the district court's order affirming the county court's suppression of the roadside sobriety and blood alcohol test results.

 Roadside sobriety tests raise issues involving the Fifth Amendment privilege against self-incrimination, *People v. Ramirez, supra,* and the Fourth Amendment right to be free from unreasonable searches and seizures. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *People v. Ramirez, supra; Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). Ordinarily the Fourth Amendment bars searches conducted without a warrant issued upon probable cause. However, an exception to this rule has long been recognized for searches conducted with the consent of the person exercising effective control over the place searched or the article seized. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *People v. Savage,* Colo., 630 P.2d 1070 (1981); *Phillips v. People,* 170 Colo. 520, 462 P.2d 594 (1969); *Capps v. People,* 162 Colo. 323, 426 P.2d 189 (1967).

In concluding that the defendant's consent was involuntary and therefore ineffective, both lower courts cited our decision in *People v. Ramirez, supra. Ramirez* was one of several consolidated cases in which we held that because the Fifth Amendment privilege against self-incrimination is not implicated by a roadside sobriety test a person need not be given *Miranda* warnings before being asked to submit to a roadside sobriety test. However, two footnotes in *Ramirez* applied Fourth Amendment consent standards to roadside sobriety tests:

"1. We are remanding [some of the companion cases] . . . to the district court for a hearing to determine whether the defendants' consent to take the roadside sobriety test was voluntary under the Fourth Amendment standards set out *infra* at note 12."

*Id.* at 617.

"12. The applicable standards for determining whether a defendant has voluntarily consented to performing the tests have been set out in *Schneckloth v. Bustamonte,* [citation omitted] and *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). *See People v. Traubert,* Colo., 608 P.2d 342 (1980). In this case, however, the question of voluntariness was not argued before this court, and, it will be treated as waived."

*Id.* at 622. Relying on *Ramirez,* the county court addressed the Fourth Amendment issue, and ruled that a consent to a roadside sobriety test cannot be voluntary unless it is knowing and intelligent and the person from whom the consent is sought has been informed that he may refuse to take the test.[4]

█ Implicit in the use of the knowing and intelligent standard as a measure of an effective waiver of constitutional rights is the supposition that the right waived must be *known. Johnson v. Zerbst,* 304 U.S. 458,

4. In footnote 4 of *Ramirez* we noted,

"An individual cannot be compelled to take a roadside sobriety test against his wishes. *See Lanford v. People,* 159 Colo. 36, 409 P.2d 829 (1966)."

*Id.* at 618. We also stated,

". . . a roadside sobriety test can only be conducted with the subject's consent and cooperation. *See Lanford v. People.*"

*Id.* at 621. As part of this interlocutory appeal, the People request us to reconsider the question of an individual's right to refuse to take a roadside sobriety test. The issue was not raised in the trial court and is not properly before us.

58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In *Phillips v. People, supra*, we therefore defined a voluntary consent to search as one intelligently and freely given, and held that the "only requirement of intelligent consent is that the person giving the consent *know* that he may properly refuse to give his permission to a search conducted without a warrant," *Phillips v. People*, 170 Colo. at 526, 462 P.2d at 597 (emphasis added).[5]

■■ The county court drew on *Phillips v. People* for its definition of voluntary consent. However, *People v. Ramirez, supra*, adopts the voluntariness standards set out in *Schneckloth v. Bustamonte, supra; United States v. Watson, supra*; and *People v. Traubert, supra*. *Schneckloth*, decided four years after our decision in *Phillips v. People*, dispelled the notion that a voluntary waiver of Fourth Amendment rights must be preceded by an advisement that consent may be withheld. In *Schneckloth*, the United States Supreme Court held

"... when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrates that the consent was in fact voluntarily given, and

not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent."

*Id.* at 248–249, 93 S.Ct. at 2059. In *United States v. Watson, supra*, the Court extended the *Schneckloth* test to the subject of a custodial search:

"... The fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search."

*Id.* 423 U.S. at 424,[6] 96 S.Ct. at 828.

■ We have followed *Schneckloth* on many occasions. *People v. Elkhatib*, Colo., 632 P.2d 275 (1981); *People v. Hayhurst*, 194 Colo. 292, 571 P.2d 721 (1977); *see also People v. Savage, supra; People v. Lowe*, Colo., 616 P.2d 118 (1980); *People v. Ramirez, supra; People v. Traubert, supra*. To the extent that findings of voluntary consent are limited by *Phillips v. People, supra*, to instances in which the person giving the consent knew that he could properly refuse to permit a search conducted without a warrant, *Phillips* is overruled.[7]

---

**5.** Justice Marshall, dissenting in *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), succinctly summarized this view of the test: "... the Government must always show that a person who consented to a search did so knowing he had the right to refuse." *Id.* at 457, 96 S.Ct. at 844. Marshall's concern was that only a "knowing choice" adequately protects Fourth Amendment rights. *Schneckloth v. Bustamonte, supra*, 412 U.S. at 277, 93 S.Ct. at 2073 (Marshall, J. dissenting). *See also A. L. I. Model Code of Pre-Arraignment Procedure* §§ 240.2(2) and (3) (1975), which provide that before a search is undertaken when the person whose consent is sought is not in custody or under arrest, that person must be informed that he is not obligated to give such consent and that anything found may be used in evidence; and, if the person is in custody, he must be given the same warning and also informed that he has the right to counsel before deciding whether to grant or withhold his consent.

**6.** In *Ramirez* we held that the defendant, although not under arrest, was in custody when he was asked to take a roadside sobriety test

because the record established that he was not free to leave the area—"a significant deprivation of his freedom of action." *Id.* at 619. Here the defendant Helm was not under arrest when he submitted to the roadside sobriety test. Although it cannot be ascertained from the record whether he was free to leave the area, the county court found that Helm was in custody when the test was administered. Custody should be determined on the basis of facts in the record. *See United States v. Hall*, 421 F.2d 540 (2d Cir. 1969).

**7.** Although the language "consent to a warrantless search was given voluntarily, knowingly and intelligently" appears in *People v. Hayhurst, supra; People v. Wieckert*, 191 Colo. 511, 554 P.2d 688 (1976); *People v. Hancock*, 186 Colo. 30, 525 P.2d 435 (1974); and *Capps v. People, supra*, these cases (including *Phillips v. People, supra*) actually used a totality of the circumstances test to determine whether consent to search was voluntarily given. Insofar as the cases are read to imply that knowledge of the right to refuse consent is a prerequisite to a review of the totality of the circumstances, we disapprove the implication.

■ In *Schneckloth*, the Court accommodated two competing concerns: "the legitimate need for [consent] searches and the equally important requirement of assuring the absence of coercion." *Id.* 412 U.S. at 227, 93 S.Ct. at 2048. The Court pointed out that " . . . a search pursuant to consent may result in considerably less inconvenience for the subject of the search, and, properly conducted, is a constitutionally permissible and wholly legitimate aspect of effective police activity." In *People v. Hayhurst, supra,* we reasoned that it was not necessary to impose on police officers an affirmative duty to warn persons of their right to refuse consent because other evidence is often adequate to demonstrate that the search was agreed to voluntarily.

■ This is such a case. Here, there is no evidence that the police officer made promises or used tactics which overbore the will of the defendant. There is no evidence that the officer claimed a right to conduct the sobriety test, or attempted to deceive the defendant. *See People v. Hayhurst, supra.* Instead the defendant promptly acceded to the officer's request for a test. Knowledge of the right to refuse consent is not a prerequisite to a valid consent but one of many factors to be considered by the trial court.

■ In addition to the failure of the officer to inform the defendant that he need not consent to a roadside sobriety test, the trial judge considered, as relevant to the determination of voluntariness, such factors as the lack of a *Miranda* warning, the custody of the defendant, his lack of formal education and his "extreme" intoxication. *Miranda* warnings are not required before the administration of a roadside sobriety test. *People v. Ramirez, supra.* Custody alone does not render consent involuntary. *United States v. Watson, supra.* Intoxication, although a factor to be considered, is not determinative of the voluntariness of a consent to search. *State v. Berry,* 526 S.W.2d 92 (Mo.App.1975). The

record indicates only that the defendant was forty-seven years old, intoxicated, and without much formal education; it contains no evidence that he failed to understand the request to take a roadside sobriety test.

■ Under the totality of the circumstances tests it is appropriate to take into account both the characteristics of the consenting person (such as youth, education and intelligence) and the circumstances of the search (such as duration and location). *United States v. Price,* 599 F.2d 494 (2d Cir. 1979); *Mobley v. State,* 335 So.2d 880 (Fla. App.1976). Because the defendant does not allege that the officer subjected him to any psychological coercion, his lack of formal education does not negate his consent. *United States v. Mayes,* 552 F.2d 729 ( 6th Cir. 1977).

■ Similarly, the defendant does not contend that he was so intoxicated that his will was overborne by coercive police tactics. *United States v. Hall,* 565 F.2d 917 (5th Cir. 1978). He readily agreed when asked to perform the sobriety test. Intoxication does not subvert consent if the individual is capable of giving an explanation of his actions. *United States v. Leland,* 376 F.Supp. 1193 (D.Del.1974); *see also Ballay v. People,* 160 Colo. 309, 419 P.2d 446 (1966). Here, the defendant volunteered information to the officer about his activities.

■ Reviewing the record as a whole, it clearly and convincingly demonstrates that, under the totality of the circumstances, the roadside sobriety test was conducted in accordance with the defendant's "essentially free and unconstrained choice;" there was no evidence that his "will ha[d] been overborne and his capacity for self-determination critically impaired." *Schneckloth v. Bustamonte, supra* 412 U.S. at 225, 93 S.Ct. at 2047; *United States v. Watson, supra* 423 U.S. at 424, 96 S.Ct. at 828; *People v. Phillips,* 197 Colo. 546, 594 P.2d 1053 (1979).[8]

8. Under the totality of the circumstances test, the prosecution has the burden of proving voluntariness by clear and convincing evidence. *People v. Hancock,* 186 Colo. 30, 525 P.2d 435 (1974); *People v. Trujillo,* 40 Colo.App. 186, 576 P.2d 179 (1977). Here the People sustained that burden.

The county court suppressed the blood alcohol test because the implied consent advisement incorporated the results of the roadside sobriety test as one of the grounds for the officer's belief that the defendant was driving under the influence of alcohol. Only the circumstances listed on the advisement notice may be advanced to justify an invocation of the implied consent law. *Lucero v. Charnes*, Colo.App., 607 P.2d 405 (1980). Because we find that the results of the roadside sobriety test are admissible, the test results, which the officer listed on the advisement notice, furnished a legitimate basis for the officer's belief that the defendant was driving under the influence of alcohol. Thus, reasonable grounds existed for the application of the implied consent law to the defendant. It was error to exclude the results of the blood alcohol test performed on the defendant.

Accordingly, we reverse the ruling of the district court which affirmed the county court's suppression of the results of the roadside sobriety test and the blood alcohol test.

LEE, J., concurs in the result.

ROVIRA, J., specially concurs.

ROVIRA, Justice, concurring in the judgment.

I concur in the judgment of reversal, but on a different basis entirely.

If I believed that the objective voluntariness standard of *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), had to be applied in this case, I would support the majority's interpretation of it. As the majority opinion demonstrates, unless a police officer in a routine traffic investigation has used so much coercion that he overbears the will of a reasonably mature, experienced, and intelligent driver, the person's performance of a roadside sobriety test, as a matter of law, will be found to be the product of his own "essentially free and unconstrained choice." *Id.* at 225, 93 S.Ct. at 2047, 36 L.Ed.2d at 862.

In my view, however, when a driver has been stopped, based upon "articulable and reasonable suspicion," of the officer, *see United States v. Cortez*, —— U.S. ——, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), a roadside sobriety test incident to the stop, which merely elicits an exhibition of physical characteristics, *People v. Ramirez*, Colo., 609 P.2d 616 (1980), does not require the "consent" of the driver if the police officer reasonably suspected that he has been driving under the influence of alcohol. In reality we know a driver's performance of such a test cannot be physically compelled and retain any validity. It cannot be conducted without the subject's active cooperation. *People v. Ramirez, supra; see Lanford v. People*, 159 Colo. 36, 409 P.2d 829 (1966). Thus, a driver's willingness to perform the test, if circumstances justify the stop and the officer requests that it be taken, is all the consent that is constitutionally required.

It is a truism that the Fourth Amendment does not prohibit all searches and seizures of potential evidence, only "unreasonable" ones. The cooperation or consent of a criminal suspect is not invariably required, even when investigating police proceed without a warrant. *E. g., United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (general search of a person incident to a lawful arrest); *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (fingernail scrapings seized prior to formal arrest); *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (voice exemplar produced for grand jury without preliminary showing of reasonable suspicion); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (handwriting exemplars obtained during custodial interrogation); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (physical characteristics and voice pattern displayed at police lineup); *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908

(1966) (blood sample taken and analyzed over objection of driver suspected of driving while intoxicated).

Fourth Amendment analysis generally proceeds on two different levels. *See United States v. Dionisio, supra.* The first involves the constitutionality of the arrest or detention of the person, the second the constitutionality of the search and seizure of contraband, fruits, instrumentalities, or evidence of crime. Where a person has been seized unlawfully, evidence which is obtained as a result of this seizure is tainted and cannot be used against the person. *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (prolonged stationhouse custody of suspect is functional equivalent of arrest and must be supported by probable cause); *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (dragnet seizure, unsupported by warrant based on reasonable suspicion, does not allow use of fingerprints obtained as a result). However, where a person is seized lawfully, or is lawfully in the presence of governmental officers, our inquiry turns to the nature of the search which is an incident of the primary investigatory intrusion. *See Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *United States v. Dionisio, supra; Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The reasonableness of the search or seizure requires a balancing of the rights of the individual and the needs of society. *Delaware v. Prouse, supra; United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Robinson, supra* (Marshall, J., dissenting); *Terry v. Ohio, supra.*

In the present case, the initial contact between the suspect and the officer was initiated by the defendant and had no Fourth Amendment implications whatsoever. There is nothing in the United States or Colorado Constitution that prevents a policeman from addressing questions to or requesting cooperation from anyone who is free to leave. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Terry v. Ohio, supra* (White, J., concurring). But if we presume that the defendant here would have been detained if he had tried to leave the scene, after he had voluntarily engaged the attention of the officer who responded to the accident report, the officer's initial intrusion upon his privacy was justified by information that the defendant had been in an automobile accident, that he had left the scene, and that he may have been drinking when the accident took place. *See United States v. Cortez, supra.* From the defendant's own breath, slurred speech, and lack of coordination, the officer had reason to suspect (and, in my opinion, probable cause to believe) that he had been driving while impaired or intoxicated by alcohol.

Automobile accident investigation, like enforcement of traffic laws in general, implicates society's interests in the safety of the public roads. Intoxicated drivers create obvious hazards to themselves and others. Yet, like other drivers, their activity has been historically subject to administrative regulation through licensing and registration procedures. *See* Title 42, C.R.S.1973. *Cf. United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (federal regulation of liquor). All drivers in Colorado are deemed to have given their consent to a chemical testing of their breath, blood, or urine for the purpose of determining the alcoholic content of their blood, if an arresting officer reasonably believes they may have been driving while intoxicated or impaired. Section 42–4–1202(3)(a)(b), C.R.S. 1973. Their refusal to comply with such chemical testing does not automatically insulate them from negative consequences. *See* section 42–4–1202(3)(e), C.R.S.1973 (1980 Supp.). The right to refuse is statutory and does not apply in every case. *People v. Sanchez,* 173 Colo. 188, 476 P.2d 980 (1970). There is certainly no constitutional basis under the Fourth Amendment to require the driver's consent to chemical testing. *Id.*

An individual's right to drive on the public roads of Colorado is far from absolute, and consequently a person's expectation of privacy in the exercise of this right must take reasonable account of the need for

public regulation and traffic safety. Chemical testing designed to determine the alcoholic content of blood is equally, if not more, intrusive in practice than a roadside sobriety test. This search—the display of physical characteristics—and this seizure—the observation and recording of the results of the test—involve none of the probing into an individual's private life and thoughts that marks an interrogation or a search for concealed evidence of criminal activity. *See United States v. Dionisio, supra; Davis v. Mississippi, supra.* In light of such cases as *Schmerber v. California, supra,* and *Terry v. Ohio, supra,* where the criminal suspect has no constitutional basis to invalidate or terminate the officer's Fourth Amendment intrusions, it seems reasonable to allow an officer to request a driver to perform a roadside sobriety test. The decision to cooperate, as distinguished from consent, remains entirely in the driver's own power. Unlike *Schmerber* or *Terry,* the officer cannot enforce compliance with this search.

An officer's authority to request roadside sobriety testing should be judged in relation to the constitutional limitations that restrict the scope of all temporary investigative detentions. The well-known standards established in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971) provide sufficient protection to all drivers against arbitrary official interference with their privacy: (1) the stop of an automobile cannot be justified unless the officer has at least a reasonable, articulable suspicion that the driver or one of the car's occupants has been or will be involved in criminal activity, that someone in the vehicle has need of the officer's assistance, or that enforcement of a valid regulation is called for; (2) the purpose of the stop must be the investigation of criminal activity or the exercise of some valid administrative function; (3) the character of the detention, in terms of duration and scope of intrusion, must relate to the purpose for its initiation. ·

In a stop for the investigation of "drunk driving," where the appearance, speech, and behavior of the driver provide the officer a reasonable basis to suspect that the driver has been driving while intoxicated, *see People v. Williams,* 192 Colo. 249, 557 P.2d 399 (1976), it is constitutionally permissible for the officer to request the driver to take a roadside sobriety test without first obtaining his consent. The driver's compliance with roadside sobriety testing gives tangible evidence of his physical condition. *People v. Ramirez, supra.* His refusal to comply leaves the officer with little choice but to complete a formal arrest, if the available facts support it, and to enforce the implied consent law. In either circumstance, the safety of the driver and the public is, and should be, the primary concern of the officer.

The type of consent which the majority imposes as a constitutional prerequisite to roadside sobriety testing is frequently described as an exception to the warrant requirement of the Fourth Amendment. But in the context of the routine enforcement of traffic laws, it becomes a confusing, paradoxical concept for anyone to grasp, let alone a police officer who is expected to depend upon his understanding of it in practice.[1] A routine automobile stop for traffic investigation purposes is certainly not a situation where an officer comes prepared with warrant in hand. I see no constitutional reason why taking fingerprints, requiring an appearance in a lineup, requiring the production of voice or handwriting exemplars, or extracting blood from unwilling criminal suspects does not require their consent, but a roadside sobriety test, which by its very nature depends upon the cooperation of its participant, does.

I would reverse the trial court because the police officer in this case conducted his traffic investigation in accord with the Fourth Amendment. *See Stone v. People, supra.* The test itself was not an unreason-

---

1. The majority has not distinguished between traffic stops supported by reasonable suspicion and those supported by probable cause. It is not clear to me whether an officer proceeding with probable cause to arrest a suspect for driving while intoxicated must also depend upon the driver's "consent" in order to ask him to perform roadside sobriety tests.

able intrusion upon the defendant's privacy, given the purpose of the detention. The defendant's "consent" to take the test is not a constitutional prerequisite to his performance of it. *See People v. Sanchez, supra.*